[No. 13920. Department Two. — February 3, 1891.]

JESSE YARNELL, Appellant, v. CITY OF LOS
ANGELES et al., Respondents.

87 603
99 561
87 603
100 19
87 603
103 493
87 603
112 329
87 603
117 243
87 603
133 104

Constitutional Law — Municipal Charter — Depositary of Public Moneys — Banks. — The provisions of section 44 of the charter of Los Angeles (approved January 31, 1889), which direct the city council to appoint as depositary of the public moneys the bank offering the highest rate of interest thereon, and further providing that the council shall direct the city treasurer to deposit with the bank daily all public moneys of the city by him collected or received, is unconstitutional and void.

Id. — Delegation of Power to Control Municipal Funds. — Section 13 of article 11 of the constitution, forbidding the legislature to delegate to any special commission, private corporation, company, association, or individual any power to control or in any way interfere with any county, city, town, or municipal money, forbids the delegation of power to a municipal corporation to do what the legislature is forbidden to do, there being no such power of delegation expressly conferred by the constitution.

Id. — Construction of Constitution — Legal Depositary — Loan of Public Money. — Section 16 of article 11 of the constitution, requiring that all moneys of any municipal corporation coming into the hands of any officer thereof shall immediately be deposited with the treasurer, "or other legal depositary," etc., is intended to designate only the public officer who is the legal custodian of the municipal funds, and does not include a private individual or corporation in the phrase "legal depositary," or authorize the relation of debtor and creditor to be established between the city and a bank by a loan to it of the public money.

Id. — Making Profit from Public Money — Bank as Public Officer. — A contract by a municipal corporation making the bank which will pay the highest rate of interest a depositary of the public moneys of the city, if it could be held to make the bank a public officer under the municipal charter, is in violation of section 17 of article 11 of the constitution, which makes it a felony for any officer having the possession or control of public money to make a profit therefrom.

Id. — Conflict with General Laws — Penal Code — Corporations. — Section 44 of the Los Angeles charter is in conflict with sections 424 and 426 of the Penal Code, establishing penalties for certain acts committed by any person charged with the receipt, safe-keeping, transfer, or disbursement of public moneys belonging to a city, which penalties could not be visited upon a private corporation, in whose possession and control the moneys of the city are placed.

Id. — Suit by Tax-payer — Injunction. — A tax-payer of a city has sufficient interest in the subject-matter to sue to enjoin the consummation of an illegal contract by the city with a bank, by which it is proposed to take the public moneys out of the hands of the legal custodian of them and deposit them in the bank as a loan at interest.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Chapman & Hendrick,* for Appellant.

The legislature cannot authorize public money to be loaned in aid of a private enterprise. (Cooley on Taxation, 69, 79, 89, 90; *Allen* v. *Inhabitants of Jay,* 12 Am. Law Reg., N. S., 481.) A bank cannot be made a public officer by special contract, without an election or appointment pursuant to a general law. (Const., art. 11, sec. 5.) The charter violates sections 9, 13, 16, and 17 of article 11 of the constitution, and also subdivisions 2, 28, and 29 of section 25, and sections 30 and 31 of article 4. The charter is void, because inconsistent with the general law. (*Matter of Maguire,* 57 Cal. 604; 40 Am. Rep. 125; *Weber* v. *Santa Clara County,* 59 Cal. 265; *Thomason* v. *Ashworth,* 73 Cal. 77–79.) All prohibitory provisions of the constitution are self-executing. (*McDonald* v. *Patterson,* 54 Cal. 245; *Matter of Maguire,* 57 Cal. 604; 40 Am. Rep. 125.)

*C. McFarland, S. M. White,* and *Graff, Gibbon & Creighton,* for Respondents.

The deposit of the money in the bank has no connection with the objects for which the tax was levied. The bank is only the depositary of the city funds, and is bound to pay out the money when required, as the treasurer would be compelled to do. The legislature has not attempted to delegate its power. It had nothing to do except to approve the charter, which is not a legislative act. The bank is a "legal depositary," under section 16 of article 11. It is only an unlawful deposit of public money in a bank which is forbidden by subdivision 4 of section 424 of the Penal Code. In this case the deposit was lawful by the terms of the municipal charter and

ordinance.   An act should not be held unconstitutional in a doubtful case.   (*Fletcher* v. *Peck*, 6 Cranch, 128.)

McFARLAND, J. — This is an action brought by a resident, and tax-payer, against the city of Los Angeles, M. D. Johnson, treasurer of said city, and the City Bank, a private corporation.   The purpose of the action is to enjoin the said treasurer from depositing the public moneys of the city with said bank pursuant to a certain contract between the city and the bank.   Defendants filed a general demurrer "that said complaint does not state facts sufficient to constitute a cause of action." An answer and supplemental answer were filed, together with some affidavits, and the case was submitted.   Subsequently, the court rendered judgment, by which it was "ordered, adjudged, and decreed that the demurrer to the complaint be sustained"; that plaintiff was not entitled to the injunction; that the order to show cause be discharged, and the action dismissed; and that defendants recover their costs.   Plaintiff appeals from the judgment, and it is clear that the appeal turns upon the sufficiency of the complaint, and the correctness of the decision of the court upon the demurrer.   Upon the face of the complaint appear the following facts: —

The city of Los Angeles is a municipal corporation existing under what is generally called a "freeholders' charter," formed in pursuance of the amendment of section 8 of article 11 of the state constitution, approved March 10, 1887.   (Stats. of 1887, p. 88.)   The charter was approved by the senate and assembly on January 31, 1889.   Section 44 of the charter provides, among other things (in brief), that it shall be the duty of the city clerk, on a certain day of January in each year, to advertise for sealed proposals from banks of deposit as to the terms upon which they will "receive and disburse the public moneys of said city."   The proposals are to specify the rate of interest, estimated upon daily bal-

ances, which the bank will allow on the public moneys deposited. And "the bank offering the highest rate of interest shall be appointed the depositary of public moneys." After it is ascertained who is the highest bidder, the council is to enter into a contract with the bank, providing that the latter shall pay "all warrants drawn upon the city treasurer" so long as there is city money in the bank to meet the warrants on the various funds. Provision is made for a bond to be given by the bank. "Upon approval of such bond, and the signing of such contract, the council shall direct the city treasurer to deposit each day, when such bank is open for transaction of business, with the bank thus selected, all public moneys of said city by him collected or received. For each such deposit the treasurer shall take the receipt of the bank, and from and after the deposit of such money in said bank the treasurer and his bondsmen shall no longer be liable therefor." Under this section of the charter the city made the kind of contract provided for therein with the defendant the City Bank; and the defendant Johnson, treasurer, was, under such contract, about to deposit the public money in said bank when this action was commenced. The question presented is, whether or not the provisions of said section 44 of the charter are constitutional and valid.

Section 6 of article 11 of the constitution provides that "cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted, by authority of this constitution, shall be subject to and controlled by general laws"; and the amendment to section 8 of article 11, under which the Los Angeles charter was framed, provides that certain cities may frame charters for their own government "consistent with and subject to the constitution and laws of this state." If, therefore, the provisions above stated of said section 44 of the charter in question are inconsistent either with the constitution or with any law which is "general," in the sense in

which it is used in the clauses above quoted, then they are invalid and void. And we think that they are inconsistent with both.

There are several clauses of the constitution which point to the intent that public moneys shall not be used by or for the benefit of private persons and corporations; but one or two of them only need be invoked here. Section 13 of article 11 provides that "the legislature shall not delegate to any special commission, private corporation, company, association, or individual, any power to make, control, appropriate, supervise, or *in any way interfere with* any county, city, town, or municipal improvement, *money*, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments, or perform any municipal functions whatever." The only method proposed to avoid this provision is to say that while the legislature may not do the thing prohibited, it may authorize its creatures — municipal corporations — to do it. But the thing which the legislature is forbidden to do, it cannot delegate to another to do, unless such power of delegation is given by the constitution itself. And in other places there is such power of delegation given. For instance, in section 12 of article 11, the legislature is forbidden to impose taxes on municipalities for municipal purposes, *but* may, by general laws, vest such power in the municipal authorities; and in section 14 of the same article, the legislature is prohibited from creating any offices in municipalities for the inspection, etc., of merchandise, etc.; but it is provided that the municipality, " may, when authorized by general law, appoint such officers." In section 13, however, there is no such power of delegation given. Under the construction contended for by respondent, while the legislature is prohibited by section 26 of article 4 from authorizing lotteries, it could give that power to municipalities.

Again, carrying out the same intention, section 16 of article 11, which does not speak of the *legislature*, but

deals directly with municipalities themselves, provides that all moneys of any municipal corporation coming into the hands of any officer thereof shall immediately be deposited " with the treasurer, or other legal depositary, to the credit of such city, town, or other corporation, respectively, for the benefit of the funds to which they respectively belong." The word " treasurer" is the one by which the custodian of public money is usually designated, and he is a public officer; and the phrase "other legal depositary" is clearly used to designate such public officer, whether he be called in any particular municipality " treasurer," or by some other name. It certainly does not mean a private individual or corporation. And in the case at bar, the relation between the city and the city bank, under the contract, is, we think, simply that of creditor and debtor, — the bank being a borrower of the public money.

But if the bank could be held to be a public officer, then the contract would be in the face of section 17 of article 11, which provides that " the making of profit out of county, city, town, or other public money, *or* using the same for any purpose not authorized by law, by any officer having the possession or control thereof, shall be a felony, and shall be prosecuted and punished as prescribed by law." In this section the phrase " making of profit out of county, city, town, or other public money" is an independent clause, and, of itself, constitutes a felony, and is not dependent upon the subsequent words "not authorized by law," so that these latter words need not be here construed.

We think, also, that the section of the charter under review is inconsistent with both the spirit and the letter of the general laws of the state relating to public moneys. For instance, section 426 of the Penal Code defines "public moneys" as including all moneys belonging to "any city, county, town, or district"; and section 424 provides that "each officer of this state, or of

any county, city, town, or district of this state, and every other person charged with the receipt, safe-keeping, transfer, or disbursement of public moneys, who" commits certain acts with respect to such public moneys as are enumerated in ten subdivisions of the section, "is punishable by imprisonment in the state prison for not less than one nor more than ten years, and is disqualified from holding any office in this state. This is certainly a "general law" within any reasonable definition of that term that could be suggested, and the forty-fourth section of the charter is clearly inconsistent with it. Counsel contend that said section 424 (Penal Code) is qualified, in most part at least, by the words "without authority of law," which occur in the first subdivision. But waiving here the meaning of the word "law," as applied to a charter adopted by only a part of the law-making power, it is sufficient to say that section 224 enumerates a great many things which one having custody of public moneys may do which are not "authorized by law" in any sense, and which are declared to be crimes punishable by imprisonment in the state prison, and by debarment from office. But if a private corporation should commit any of these crimes, how could it be made to suffer the penalty prescribed? It has neither a body to be imprisoned, nor a right to hold office of which it could be deprived. It seems clear, therefore, that a scheme which places public moneys in the possession and control of a private corporation is entirely inconsistent with the provisions of the section of the code above quoted.

Without referring with further detail to other provisions of the constitution and the laws, our conclusion is, that the parts of section 44 of the charter of the city above referred to, and the said contract attempted to be made under it, are inconsistent with both the constitution and the general laws of the state; that the complaint in this action states facts sufficient to constitute a cause of

action; and that the court below erred in sustaining the demurrer.

The point is hinted at, though not pressed in the briefs, that a tax-payer cannot maintain this action. We suppose that counsel wish the case decided on its merits, and not upon an issue in the nature of one raised by a dilatory plea; for their arguments go almost entirely to the point of the constitutionality and validity of the part of the charter assailed. We think, however, that in this case, where it is proposed to take all the public moneys of the municipality out of the hands of their legal custodian, and place them in the possession and control of a private corporation, a tax-payer has sufficient interest in the subject-matter to prevent, by suit, the consummation of the illegal act.

The judgment is reversed, with direction to the superior court to overrule the demurrer to the complaint.

DE HAVEN, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.