I follow these landmarks, guiding me, as I think, to a correct conclusion.

Let there be a decree for complainant, declaring a lien for its debt upon the waterworks plant and upon the interest of the defendant in the premises in question; directing a sale of the plant, and such interest in the lands, and of the franchise of maintaining and operating the plant for the uses to which it is devoted by the law of the defendant's incorporation, as an entirety, and that the proceeds of sale be brought into the registry of the court, for distribution among all who may show right thereto.

---

### SAN DIEGO COUNTY *v.* CALIFORNIA NAT. BANK *et al.*

*(Circuit Court, S. D. California.   October 3, 1892.)*

1. BANKS AND BANKING—DEPOSITS—COUNTY FUNDS.
    Where the treasurer and tax collector of a county, without authority of law, deposit county moneys in a bank, and receive certificates of deposit marked "Special," the title to the moneys does not pass, although there is no agreement that the identical bills shall be returned, and they are mixed with the bank's general funds, and the county is entitled to recover an equal amount from a receiver of the bank prior to the payment of the general depositors.

2. SAME—EQUITABLE REMEDIES.
    The county's rights in such case are enforceable only by a bill in equity, for there is no privity of contract between it and the bank. *National Bank* v. *Insurance Co.*, 104 U. S. 54, followed.

In Equity. Bill by the county of San Diego against the California National Bank and Fredrick N. Pauly, as receiver thereof, to recover certain moneys deposited in the bank by the county treasurer and the tax collector. Heard on demurrer to the complaint. Overruled.

*Works & Works*, for complainant.

*M. T. Allen*, for defendants.

Ross, District Judge. This suit was originally brought in the superior court of San Diego county against the defendant bank, a national bank organized under and pursuant to the laws of the United States, and which became insolvent and suspended payment on the 11th day of November, 1891, and against Fredrick N. Pauly, the duly appointed and acting receiver of the assets and property of the bank, on whose motion the suit was transferred to this court. The complainant is a municipal corporation of the state of California, and by its bill charges that on the 15th day of August, 1891, its then duly elected, qualified, and acting treasurer, C. R. Dauer, made with the defendant bank a deposit of the moneys of the complainant then in his custody as such treasurer, of $5,975.70, lawful money of the United States, and took from the bank a certificate of deposit therefor, in the words and figures following, to wit:

"5,975.70 The California National Bank.
"Dollars.
"San Diego, Cal., August 13, 1891.
"No. 6,700.
"C. R. Dauer, Co. Treas., has deposited in this bank five thousand nine hundred seventy-five and seventy one hundredths dollars, payable to the order of same, on return of this certificate properly indorsed.
"G. N. O'BRIEN, Cashier."

Other similar deposits by Dauer, as such county treasurer, aggregating $10,000 additional of complainant's money, are also alleged, for which similar certificates of deposit are alleged to have been issued by the bank, and taken by the treasurer. The bill further charges that on the 2d of November, 1891, the then duly elected, qualified, and acting tax collector, H. W. Weineke, of the county complainant, made with the defendant a deposit of the moneys of the complainant then in his custody as such collector, of $6,114.85, lawful money of the United States, and took from the bank its certificate of deposit therefor in the words and figures following, to wit:

"6,114.85 The California National Bank.
"Dollars.
"San Diego, Cal., November 2, 1891.
"No. 6,891.
"H. W. Weineke, Tax Coll'r, has deposited in this bank six thousand one hundred fourteen and eighty-five one hundredths dollars, payable to the order of same on return of this certificate properly indorsed.
"G. N. O'BRIEN, Cashier."

Other similar deposits by Weineke, as such county tax collector, aggregating $20,000 additional of complainant's money, are also alleged, for which similar certificates of deposit are alleged to have been issued by

the bank, and taken by the tax collector. The bill further alleges that between the 2d and 10th days of November, 1891, the aforesaid tax collector of complainant made with the defendant bank deposits of the moneys of the complainant then in his hands as such collector, in various amounts, aggregating $24,532.75, for which no certificates of deposit were taken by him. It is averred that all of the moneys so deposited by the treasurer and tax collector of the complainant county were held by its officers in trust for the complainant, and were deposited by them, and received by the bank, without authority of law; that the deposits were made by the officers named, for safekeeping; that the bank knew at the time that the moneys so deposited were the moneys of the complainant, held by the treasurer and tax collector, respectively, as public officers, and in trust for the complainant; and that each of the certificates issued therefor was indorsed "Special," because of the fact that the moneys were public and trust funds. It is alleged that no part of the moneys so deposited has been repaid, except the sum of $2,453.27; that the defendant receiver has, since his appointment, received of the assets of the bank a sum sufficient to pay and satisfy the amounts deposited by the treasurer and tax collector, but refuses to pay the same to complainant; that there is not sufficient moneys or assets of the bank to pay its indebtedness in full; and that the receiver is about to, and will, unless restrained from so doing, apply a part of the funds now in his hands, and alleged to belong to complainant, to the payment of the general indebtedness of the bank, thus depriving complainant of its alleged right to receive the amount of its funds in full.

The defendants, by demurrer, urge two objections to the bill: *First,* that complainant has a plain and adequate remedy at law; *second,* that the bill contains no equities entitling complainant to any relief against the defendants, or either of them. It is very clear that if the bill states a cause of action at all it is of an equitable nature, and enforceable in a court of equity only. A similar point was raised in the case of *National Bank* v. *Insurance Co.,* 104 U. S. 54. In that case one Dillon was the agent of the insurance company. He kept an account with the bank; the account was entered on the bank books with him as general agent. As agent of the insurance company he collected, and it was his duty to remit, the premiums. In the course of his dealings with the bank he borrowed money on his personal obligation. Finally, the bank sought to appropriate his deposits to the payment of this debt. The insurance company filed its bill in equity to recover the amount of those deposits, as equitably belonging to it. The fact that they were premiums received for the insurance company was shown. The court said:

"It is objected that the remedy of the complainant below, if any existed, is at law, and not in equity, But the contract created by the dealings in a bank account is between the depositor and bank alone, without reference to the beneficial ownership of the moneys deposited. No one can sue at law for a breach of that contract except the parties to it. There was no privity created by it, even upon the facts of the present case, as we have found them between the bank and the insurance company. The latter would not have been liable for an overdraft by Dillon, as was decided by this court in *National Bank*

v. *Insurance Co.*, 103 U. S. 783; and, conversely, for the balance due from the bank no action at law upon the account could be maintained by the insurance company.   But although the relation between the bank and its depositor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, ' To whom, in equity, does it beneficially belong? '   If the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account."

See, also, *Bank* v. *Gillespie*, 137 U. S. 411, 11 Sup. Ct. Rep. 118; *Bank* v. *Walker*, 130 U. S. 267, 9 Sup. Ct. Rep. 519.

In the present case, not only did the defendant bank, according to the averments of the bill, have knowledge that the depositors of the moneys in question were, at the time of such deposits, officers of the complainant county, and that the moneys so deposited belonged to the complainant, and were therefore held by the officers depositing the same in trust for the county, but the bank is chargeable with notice of the fact that the law of the state made it illegal for those officers to make, or the bank to receive, such deposits.   *Yarnell* v. *City of Los Angeles*, 87 Cal. 603, 25 Pac. Rep. 767.

The bank, therefore, acquired no title to the moneys so deposited, as against the complainant, and they continued impressed with the trust in complainant's favor.   It is true that the moneys in question were not made as a special, as contradistinguished from a general, deposit, as those terms are understood in banking matters; that is to say, it was not agreed between the officers making the deposits and the bank that the identical moneys deposited were to be returned.   The moneys deposited by the officers of complainant were no doubt mingled with the moneys of the bank, and their identity thus lost; but can such fact destroy the trust in complainant's favor, or prevent the enforcement of it by a court of equity?   The bank being insolvent, the question is between the complainant and the general creditors of the bank represented by the receiver.   The ordinary creditors became such voluntarily; they deposited their money with the bank with their eyes open.   But the money of the complainant was deposited by its officers, and received by the bank, not only without the knowledge of complainant, but contrary to law.   To put the complainant on the same plane with the ordinary creditors is to make the former share in a loss to which it did not voluntarily subject itself, and to give to the latter a share in money which never in equity became the property of the bank.   This is certainly not just.   It was said by Mr. Justice BRADLEY in *Frelinghuysen* v. *Nugent*, 36 Fed. Rep. 239:

"Formerly, the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it, the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale; but if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire

mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor."

This rule was recognized as correct and applied by the supreme court in *National Bank* v. *Insurance Co.*, 104 U. S. 56, 67; *Peters* v. *Bain*, 133 U. S. 694, 10 Sup. Ct. Rep. 354; and its application to the facts alleged in the bill in the present case is sufficient to sustain it. Demurrer overruled.