[S. F. No. 4828. In Bank.—September 14, 1907.]

## JOSEPH ROTHSCHILD, Appellant, v. C. A. BANTEL, Treasurer of the City and County of San Francisco, Respondent.

MUNICIPAL CORPORATION — UNAUTHORIZED DEPOSIT OF MONEY — TAX PAYER MAY ENJOIN.—A taxpayer of the city and county of San Francisco may maintain an action against the treasurer thereof to enjoin him from depositing money of the municipality in his custody with banks and banking corporations doing business therein, when such deposit is forbidden by law.

ID.—FREEHOLDERS' CHARTER—SAN FRANCISCO.—The freeholders' charter of the city and county of San Francisco, adopted in 1899 (secs. 2, 3, chap. 3, art. IV,—Stats. 1899, p. 272), in terms prohibits the deposit of municipal funds in banks or banking corporations.

ID.—MUNICIPAL AFFAIRS — CONSTITUTIONAL LAW. — The provisions of that charter prohibiting certain uses of municipal moneys, requiring the municipal officers to keep the same in their possession, and prescribing the manner in which they shall keep them, relate purely to municipal affairs; and under the "municipal affairs" amendment to section 6 of article XI of the constitution, adopted in 1896, such provisions in a freeholders' charter are paramount to any law enacted by the state legislature, and the legislature is without power to enact any law infringing thereon.

ID.—DEPOSIT OF MONEY IN BANKS—POWER OF LEGISLATURE TO AUTHORIZE.—Section 16½ of article XI of the constitution, adopted November 6, 1906, declaring that "all money belonging to the state, or to any county or municipality within this state, may be deposited in any national bank or banks, within this state, or in any bank or banks organized under the laws of this state, in such manner and under such conditions as may be provided by law," does not empower the legislature to enact a law, such as the act of March 23, 1907, which would authorize a municipal corporation, such as the city and county of San Francisco, organized under a freeholders' charter, to deposit its municipal funds in such banks contrary to an express provision of its charter denying it such power.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

William A. Kelly, and Theo. J. Roche, for Appellant.

William G. Burke, City Attorney, and A. S. Newburgh, Assistant City Attorney, for Respondent.

ANGELLOTTI, J.—This is an action brought by a resident and taxpayer of the city and county of San Francisco against the treasurer thereof, to obtain a decree enjoining him from depositing money of the municipality in his custody with banks and banking corporations doing business in said city and county. A general demurrer to the complaint was sustained, and, plaintiff having declined to amend, judgment was given for defendant. This is an appeal by plaintiff from, such judgment.

That a taxpayer may maintain an action to prevent such a deposit where the same is forbidden by law was held by this court in *Yarnell* v. *City of Los Angeles*, 87 Cal. 603, [25 Pac. 767], which was a similar action. It is not claimed that the complaint does not state a cause of action if the proposed act of the treasurer was opposed to the law relative to the keeping of municipal money, applicable to the city and county of San Francisco.

Respondent bases his claim that his proposed action is authorized by law upon the provisions of an act of the legislature of the state, approved March 23, 1907, (Stats. 1907, p. 974,) providing for and regulating the deposit of county and municipal moneys in banks and banking corporations. This act provides that "all moneys belonging to any county or municipality within the state, may be deposited by any officer of such county or municipality having the legal custody, of such county or municipal funds in any licensed national bank, or banks, within this state, or in any bank, banks, or corporations authorized and licensed to do a banking business, and organized under the laws of this state," upon certain security furnished by the depositary in bonds of the United States, this state, or any county, municipality, or school district within the state, of a market value at least

ten per cent in excess of the deposit, approved by the officer making the deposit and the district attorney. Under the act, interest is to be paid by the depositary for the use of the money. The other provisions of the act are immaterial to the question before us.

Such proposed disposition by the respondent of municipal money is, however, in terms prohibited by the provisions of the freeholders' charter of said city and county. That charter, adopted in the year 1899, provides: "The treasurer shall receive and safely keep all moneys which shall be paid into the treasury. *He shall not lend, exchange, use, nor deposit the same, or any part thereof, to or with any bank, banker or person; nor pay out any part of such moneys, nor allow the same to pass out of his personal custody,* except upon demands authorized by law or this charter, and after they shall have been approved by the auditor . . ." (Sec. 2, chap. 3, art. IV of the charter,—Stats. 1899, p. 272.) (The italics are ours.) Section 3 of the same chapter provides, with elaborate detail, for a joint custody safe, in which shall be kept the moneys of the city and county, behind two combination locks, neither of which alone will open the same, the treasurer alone to have knowledge of one combination, and the auditor alone to have knowledge of the other. In this safe are to be kept all money of the city and county except such as may be required each day for the payment of demands against the treasurer, the estimated amount required daily for this purpose to be taken from the joint custody safe and kept in another safe.

These charter provisions prohibiting certain uses of the municipal money, requiring the officers of the city and county to keep the same in their possession, and prescribing the manner in which they shall keep them, unquestionably relate purely to municipal affairs. This is not disputed by respondent. It is unnecessary to cite authorities to the well-settled proposition that under the "municipal affairs" amendment to section 6, of article XI of the constitution, adopted in the year 1896, provisions in a freeholders' charter of a municipality as to municipal affairs are paramount to any law enacted by the state legislature, and that the legislature is without power to enact any law infringing thereon. This general proposition is also admitted by respondent.

It is of course true, as urged by respondent, that the people of the state, who by a provision of the constitution have granted to freeholders' charter cities this immunity from legislative interference with charter provisions relative to municipal affairs, may in like manner take away the same in whole or in part, and leave with the state legislature the power to enact laws which would have the effect of suspending the force of any or all charter provisions. It is claimed by respondent that they have done this as to matters covered by the charter provisions hereinbefore referred to, and that consequently the legislature was authorized to enact a law applicable to the city and county of San Francisco, so far as this particular municipal affair is concerned.

The constitutional provision relied on as accomplishing this result is section 16½ of article XI, adopted November 6, 1906. It declares that "all money belonging to the state, or to any county or municipality within this state, may be deposited in any national bank or banks, within this state, or in any bank or banks organized under the laws of this state, *in such manner and under such conditions as may be provided by law,*" under certain conditions as to amount and kind of security, amount of deposits, interest, etc. (The italics are ours.) It is in the italicized words that respondent finds the conferring of authority upon the state legislature to enact a law authorizing officers of the municipality of the city and county of San Francisco to make the contemplated deposits of municipal moneys, in the face of the express prohibitions in that regard contained in the charter.

We are satisfied that the constitutional provision referred to cannot reasonably be construed as accomplishing any such result. The sole object of the enactment is apparent from its language, considered in connection with the then condition of the law upon the subject. It had been established by the decision of this court in *Yarnell* v. *City of Los Angeles,* 87 Cal. 603, [25 Pac. 767], that the deposit of public moneys of the city with any bank or private corporation, even when the freeholders' charter of the city in terms purported to authorize the same, was prohibited by certain provisions of the state constitution. Under the views expressed in the opinion as to the effect of the then existing constitutional provisions, it was impossible, in the absence of an amend-

ment to the constitution in that regard, to make valid provision, either in any general law of the state or in a freeholders' charter, for any such deposit of public moneys. It was intended by the constitutional enactment in question simply to remove the constitutional prohibition then existing, and authorize such provision to be made by the proper authority, subject to certain expressed limitations. The portion of section 16½ that declares that public money *may* be deposited in certain banks is strictly permissive in character, and, standing alone, would afford no pretense for a claim that a city having the right to make its own provisions as to municipal affairs cannot provide that its own officers shall retain the custody of its own moneys, and that the same shall not be deposited in any bank or loaned. The words "in such manner and under such conditions as may be provided by law," following this provision, are simply a limitation upon the permission before given, the effect thereof being that such deposits may be made only in the manner and under the conditions provided by such laws as may properly be enacted in regard thereto. As to the state, any county, or any municipality organized under the general municipal corporation act, such laws providing for the deposit and the manner and conditions thereof, may undoubtedly be enacted by the legislature of the state. But when we come to the matter of the safekeeping of the moneys of a municipality having a freeholders' charter, such charter, "the organic law" of the city (Const., art. XI, sec. 8), so far as it speaks upon the matter at all, is, subject to the constitution, the paramount law, and, except as provided in the constitution, nothing contrary thereto can be "provided by law." In such a case the charter provision is the "law" referred to in the constitutional provision. The provision is not that the deposit may be made in such manner and under such conditions as may be provided by the legislature, or by any particular kind of law, but is simply "as may be provided by law." The policy of the state as to the supremacy of the provisions of a freeholders' charter in municipal affairs is too well established to warrant the drawing of the inference from the language under consideration, of any intention to authorize the state legislature to make provision contrary to provisions of the charter in that behalf as to the manner in which the

city and county of San Francisco shall hold and manage its own moneys. Under the constitution as it now stands, that municipality undoubtedly has the right, if it so desires, to avail itself of the permission given by the state constitution to deposit its moneys in banks under the conditions and limitations expressed in the constitution, but as long as the provisions of the charter remain as they are it is the expressed will of the people thereof that no such deposit shall be made, and that the officers of the municipality shall retain such money in their custody.

It follows from what has been said that the charter provisions control as to the matter under discussion and forbid the proposed disposition of the municipal moneys.

The judgment of the superior court is reversed and the cause remanded.

Shaw, J., Sloss, J., Henshaw, J., McFarland, J., Lorigan, J., and Beatty, C. J., concurred.