Marshall, C. J.
 

 One of the assignments of error states that the judgment of the Court of Appeals is contrary to the manifest weight of the evidence, is not sustained by sufficient evidence, and is contrary to law. This assignment of error might .well be disregarded on the ground that, this court does not' weigh the evidence or determine its sufficiency,
 
 *262
 
 but merely inquires whether there is any evidence tending to support the judgment. The only issue of fact tendered by the petition relates to the alleged shortcomings of the certificate of the city clerk; it being stated that the clerk had not determined whether signatures of a sufficient number of electors were attached to the alleged amended petition, and that the certificate does not certify as to the number of electors who signed the' petition, or that any of the signers were electors of the city of Cleveland, or that any of the signatures were genuine, or that any of the signers were eligible to sign said petitions. Pursuant to that allegation, testimony was apparently taken reflecting upon the alleged fraudulent character of the petition, but only a small portion of the bill of exceptions was printed and we do not therefore have all the testimony upon that point. Assuming that the defendants made no objection to the introduction of this testimony, and assuming that an issue was thereby raised, it was an issue of fact which the Court of Appeals must have decided in favor of the defendants, and this court will not weigh the evidence or disturb the findings and judgment of the Court of Appeals upon that issue.
 

 It is further urged that, although the original referendum petition contained approximately 22,-000 names, and that although only approximately 10,000 names were required, inasmuch as only 5,-400 were found to be valid signatures, the original petition was therefore not sufficient to suspend the operation of the ordinance. The petition was sufficient on its face, and under the charter provisions of the city of Cleveland a duty devolves upon the city clerk to determine the number of valid signa
 
 *263
 
 tures, and, after determining that there are not a sufficient number of valid signatures, the charter further permits an amendment at any time within ten days after the clerk has made a certificate of insufficiency, by filing a supplementary petition with additional names as provided in case of an original petition. The procedure outlined by the charter was therefore followed, and, if the charter provisions control, it follows that the original petition, even though it was later determined to be insufficient, would nevertheless suspend the operation of the ordinance pending the filing of an amendment by way of supplemental petition.
 

 It is further assigned as error that the order of injunction of December 28, 1926, did not restrain the city clerk from certifying to the insufficiency of the petition within the period of ten days from the filing of said referendum petition, and that therefore the failure of the city clerk to make a finding of insufficiency within the period of ten days, and the failure to file the amended referendum petition within ten days thereafter, render the entire proceeding for referendum null and void. The referee found on this point that the injunction was operative to prevent him from taking any action, and in this view we concur. The city clerk, by analogy to the case of
 
 State, ex rel. Gongwer,
 
 v.
 
 Graves, Secy. of
 
 State, 90 Ohio St., 311, 107 N. E., 1018, was invested with quasi-judicial authority, and an injunction order restraining him from making a finding of sufficiency would operate to restrain him from rendering any judgment whatever, and he was entirely within his rights in refusing to make any finding until after that injunction had been dissolved. The delay in making a finding, not
 
 *264
 
 being chargeable to his own neglect, and not in any sense being chargeable to the neglect of the petitioners, but on the contrary being in obedience- to an order of a court of general jurisdiction with power to enjoin, it follows that the amendment and supplement were filed in time, though more than 20 days had elapsed from the time the original referendum petition was filed.
 

 As another assignment of error, it is claimed that the preparation of said referendum petitions and the signatures thereto were procured under the management, direction, and control of the Cleveland Real Estate Board, an Ohio corporation, and that said corporation acted in violation of the laws of the state in expending money for that purpose, and that by reason thereof the petitions procured by them and at their expense become null and void. This is not a
 
 quo warranto
 
 action to inquire into the acts and proceedings of the Cleveland Real Estate Board. Whether or not that corporation violated some statute having no relation to statutes governing the referendum can have no bearing upon the referendum petition. The referendum petition is the petition of the signers thereto, and, if the procedure governing the referendum has been observed and the signers have themselves been guilty of no fraud, the referendum proceedings would not be null and void. The petition does not allege, the evidence does not show, and it is not claimed by counsel for plaintiff, that the- Cleveland Real Estate Board was guilty of any fraud in connection with the circulation of the petitions. It should be further stated that whether the Cleveland Real Estate Board acted illegally, and whether it was guilty of such conduct as would amount to a viola
 
 *265
 
 tion of the statute,'is a question of fact which was determined by the court below in favor of defendants, and this court will not review that finding of fact.
 

 It is further assigned as error that the Court of Appeals appointed a referee to take testimony and to make findings of fact and report his conclusions of law. The authority of the Court of Appeals to submit any matter pending in that court to a referee to make findings of fact and report conclusions of law has been challenged. It is insisted that Ohio Courts of Appeals have not been given authority by statute, neither do they possess inherent power, to refer controversies to a master to make findings of fact and report conclusions of law. Inasmuch as Courts of Appeals of this state, and their predecessors, the circuit courts, have exercised this authority continuously from the time of the institution of such courts, this question challenges our serious attention. It may be conceded that there is no authority to make a compulsory reference in cases where the right to a trial by jury exists, and we are only concerned with the inquiry whether a compulsory reference may be made in an equitable action. In some of the states of the Union the courts have held that the authority to make a compulsory reference exists only by virtue of a statute. In other states the inherent power of the court has been upheld. Section 12223, General Code, provides:
 

 “The Court of Appeals shall have jurisdiction of certain cases, as hereinafter provided, by appeal; and the trial therein shall be conducted in the same manner as in the common pleas court * *
 

 Section 12224, which sought to define the juris
 
 *266
 
 diction of Courts of Appeals, was declared by this court to be unconstitutional in the case of
 
 Wagner
 
 v. Armstrong, 93 Ohio St., 443, 113 N. E., 397, on the ground that the constitutional amendment of 1912 defined the jurisdiction of the Court of Appeals and confined its appellate jurisdiction to the trial of chancery cases, and that the Legislature could neither add to nor take from the provisions of Section 6, Article IY, of the Constitution. Section 12223 does not seek to confer jurisdiction. That part of the section which declares that the trial shall be conducted as in the common pleas court is a provision which is purely procedural. The power of the Legislature to regulate the procedure of all the courts in this state has never been questioned. The action of the court in appointing a referee has been held to be procedural in the following cases:
 
 Hobart
 
 v.
 
 Hobart,
 
 45 Iowa, 501;
 
 Thurber
 
 v.
 
 Chambers,
 
 4 Hun (N. Y.), 721;
 
 Haynes
 
 v.
 
 Hayes,
 
 68 Ill., 203;
 
 Crocker
 
 v.
 
 Currier,
 
 65 Wis., 662, 27 N. W., 825;
 
 Commissioners of Philadelphia County
 
 v.
 
 Snowden, Treas.,
 
 2 Yeates (Pa.), 95.
 

 In the foregoing cases the appointment of a referee has been called a rule of court, and directions of the proceedings of referees called questions of practice, and it has also been declared that referees perform no judicial act. In the case of
 
 Newcomb
 
 v.
 
 Wood,
 
 97 U. S., 581, 24 L. Ed., 1085, the Supreme Court of the United States had under consideration the validity of a reference and the power of the District Court of the United States of the Northern District of Ohio to refer a controversy to a master. Mr. Justice Swayne, himself a resident of Ohio, delivered the opinion of the court and placed the decision upon a section of the Ohio
 
 *267
 
 Code, to-wit, 51 Ohio Laws, p. 103, Section 281, now Section 11475, General Code. That section refers to reference by consent. Section 11476 gives to courts of common pleas authority to direct a reference in cases where the parties do not consent. In
 
 Newcomb
 
 v.
 
 Wood
 
 the parties had consented. Section 11479, General Code, defines the authority of the referee, requiring referees to state the facts found and conclusions of law separately, and further permitting exceptions and review as in a trial by the court. While the report upon the whole issue stands as the decision of the court, the judgment must be entered by the court as if the court had tried the action. In the instant ease the reference was by consent of the parties, and the referee was authorized to hear and determine the issues in the case, but, even so, the court referred back the report of the referee to permit a motion for new trial to be argued, and no judgment was entered upon the report of the referee until parties were heard upon motions to reject and to confirm, and the referee was therefore permitted to perform no judicial act, but on the contrary the judgment was, after due deliberation and consideration of his report and findings, entered by the Court of Appeals. The action of the referee was therefore at best only advisory and informative, and is not essentially different from the services rendered by counsel for the respective parties. Upon the inherent power of the court to direct a reference to a master, without statutory authority and without consent of the parties, judicial precedent is not lacking in Ohio. In
 
 Treasurer of Champaign County
 
 v.
 
 Norton,
 
 1 Ohio, 270, the Supreme Court of Ohio, by two of its members sitting on circuit, as it
 
 *268
 
 then had a right to do, in the county of Clark, heard a case on appeal from the court of common pleas of that county. In the court of common pleas there had been a reference to a master, and this was at a time when there was no statutory provision on. the subject. Neither does it appear that the reference was by consent of the parties, though it did appear that there was no objection to such submission. It was held by the court in that case that neither the submission nor the report was vacated by the appeal, but that the report was open to the same exceptions as in the court below. It appearing that there were certain imperfections in the report, this court referred the case to the same commissioner for re-examination and report. This case was decided in the year 1824, many years before there was an intermediate reviewing court. If the power of the Court of Appeals to direct a reference is denied, it would create an anomalous situation. The court of common pleas clearly has the right to direct a reference in chancery cases, and an appeal from the common pleas court vacates the judgment. The case must then be tried
 
 de novo
 
 in the Court of Appeals. It would create an intolerable situation if complicated cases involving accounting were required to be heard in the Court of Appeals by all the judges without a reference. This court has thrown some light upon this question in
 
 Bell
 
 v.
 
 Crawford,
 
 25 Ohio St., 402, where the following propositions were stated in the syllabus:
 

 “1.
 
 On appeal to the district court, the case stands upon the issues joined in the court below, and, for the purpose of trying such issues, the parties are entitled to introduce any competent testi
 
 *269
 
 mony without regard to the fact whether such tes-, timony was or might have been offered on the hearing before the master.
 

 “2.
 
 But where an order of reference in such action is made to the master for the purpose of stating an account, or ascertaining some other matter, ancillary to the determination of the cause by the court, the report is not vacated by an appeal, but is carried to the appellate court for confirmation, modification, or vacation, as the appellate court may determine from the testimony so reported, unless, upon some equitable showing, the court permits additional testimony to be offered.”
 

 The power of the Court of Appeals to direct a reference must be upon as firm a footing as the power of the Supreme Court to direct a reference in an original suit in this court, because there is no statutory authority for the Supreme Court to direct a reference. This court has, however, in numerous cases directed a reference, with authority to make’ findings of.fact and report conclusions of law, and in many of these instances without the agreement or express consent of the parties. The earliest reported case on this subject is
 
 Hays
 
 v.
 
 Jones, 27
 
 Ohio St., 218, in which a case appealed from the common pleas court of Fayette comity to the district court, and by that court reserved to the. Supreme Court, was sent by the Supreme Court to a master to report upon certain disputed facts. The latest eases in which a master has been appointed by this court are
 
 State, ex rel. Schultz,
 
 v.
 
 Carrel, Aud.,
 
 105 Ohio St., 351, 137 N. E., 915, in which a master was appointed to take testimony and' make findings of fact, and
 
 State, ex rel. Crabbe, Atty. Gen.,
 
 v.
 
 Wead, Aud.,
 
 113 Ohio St., 692, 150 N. E.,
 
 *270
 
 80, in which a referee was appointed, with power to make findings of fact and conclusions of law.
 

 The courts of some of the states of the Union have held that chancery courts have power to direct a reference, where not forbidden to do so by statutes. The courts of other states hold that there must be statutory authority. A third class holds that there is inherent power. In this state the courts have recognized the inherent power to direct a reference, not, however, permitting a referee to render any judicial act, but to make findings of fact and report conclusions, which must be approved and confirmed by the court, and reserving to the court alone power to render final judgment. By the Ohio statute defining common pleas court procedure, where the reference is to determine facts alone, the findings of the referee have the effect of a special verdict. The statute does not declare the effect of reporting conclusions of law, but it logically follows that a general reference to make findings of fact and report conclusions of law has the force and effect of a general verdict, upon which judgment may be entered by the court upon confirmation of the report.
 

 In the instant case there can be no doubt about the validity of the direction of a reference, because the parties consented thereto. And there can be no doubt about the force and effect of the referee’s report, because he was authorized to hear and determine the issues. His findings, therefore, have the force and effect of a general verdict, and the findings of fact of the referee will not be reviewed further than to determine whether there was any evidence to support those several findings. So far as this court is concerned, each and every finding
 
 *271
 
 of fact ‘which is supported by any evidence will be taken as true.
 

 The assignment of error remaining to be discussed relates to the constitutionality of the Cleveland charter provisions which govern the preparation and filing of a referendum petition.
 

 The ordinance in question is subject to a referendum, and the referendum is not precluded by the declaration of an emergency.
 

 The petition for referendum conforms to the requirements of the charter, and wholly fails to conform to Sections 4227-1 to 4227-13, General Code, and likewise fails to conform to Section 1
 
 g
 
 of Article II of the Constitution.
 

 If the charter provisions are valid and constitutional, and if they govern a referendum in the charter city of Cleveland, the judgment of the Court of Appeals must be affirmed.
 

 A reading of Section
 
 lg
 
 of Article II is sufficient,, without argument, to show that it applies only to a state-wide referendum upon an enactment of the General Assembly; and it is declared to be self-executing, and therefore requires no legislation to give it force and effect.
 

 On the other hand, Section
 
 If
 
 has particular and exclusive reference to a municipal referendum and is not made self-executing, but it is provided that such powers are to be exercised in the manner now or hereafter provided by law.
 

 It was thus made obligatory upon the Legislature to provide the
 
 modus opercmdi,
 
 which obligation was discharged by the enactment of Sections 4227-1 to 4227-13, General Code.
 

 Section 4227-12 provides as follows: “The provisions of Sections 4227-1 to 4227-13 inclusive shall
 
 *272
 
 not apply to any municipality that has or may hereafter adopt its own charter which contains an initiative and referendum provision for its own ordinances and other legislative measures.”
 

 It is claimed that hy this exemption it is placed in the power of the people of a municipality to adopt charter provisions so stringent as to preclude any referendum, or so loosely and liberally drawn as to be the vehicle of fraud. We shall not determine in the instant case concerning the validity of such a charter. It is sufficient to say that the Cleveland charter contains reasonable requirements and safeguards.
 

 It is further claimed that Section 4227-12 contravenes Section 26 of Article II of the Constitution, which provides in part that all laws of a general nature shall have a uniform operation throughout the state. It is settled beyond argument that Section 26 .of Article II permits reasonable classifications, and the section is not violated if laws have a uniform operation upon all subjects within a class thus reasonably established. Cities are classified in Article XVIII of the Constitution into charter and noncharter cities, and nothing could be clearer than the constitutional authority of the General Assembly to recognize such classification, making Sections 4227-1 to' 4227-13, General Code, applicable without distinction to all noncharter cities and to those cities having a charter which contains no initiative and referendum provisions, and leaving reasonable charter provisions unimpaired and unimpeded.
 

 The Cleveland charter is not of general nature, and has local application to the people of the city of Cleveland alone. The power of charter cities
 
 *273
 
 to make charter provisions regulating the manner of exercise of the referendum does not in any sense depend upon the exemptions stated in Section 4227-12. That section is merely a legislative recognition of a constitutional limitation upon its own power. The real power of charter cities is referable to Sections 3 and 7 of Article XVIII of the Ohio Constitution.
 

 Section 3 provides: “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
 

 Section 7 provides: “Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government. ’ ’
 

 In its last analysis this controversy turns upon the inquiry whether a zoning ordinance is a matter of a local nature, and whether the manner of invoking a referendum upon any ordinance is likewise local in character.
 

 If any character of municipal legislation is more distinctly local than any other, then a zoning ordinance must be held to occupy the first position. A zoning ordinance must in the nature of things have no application to any other city. In order that such an ordinance have any validity whatever, the local conditions must be carefully studied and analyzed, and the ordinance must necessarily be a solution of purely local problems.
 

 Let us next consider, therefore, the local character of the manner of invoking the referendum.
 
 *274
 
 Some governmental regulations interest and concern only the people of municipalities by reason of peculiar social problems arising out of their closer community life. The temptations, the vices, the habits, the sentiments, the modes and manners of living, the menaces to health and safety, peculiar to municipal life, call for more regulation and a different character of regulation than that found sufficient for the sparsely settled rural communities. It is equally apparent that the problems of the village are essentially different from the problems of the metropolitan center.
 

 It was in recognition of these truths that the convention of 1912 drew Article XVIII of the Ohio Constitution granting to municipalities the exercise of all powers of local self-government, except that, in the adoption and enforcement within municipal limits of local police, sanitary, and other similar regulations, there must be no conflict with general laws.
 

 The Constitution does not define, or classify, local and general powers, and, since resort cannot be had to legislative definition, these questions as they arise must be settled by interpretation. The task of interpretation has been undertaken by this court in such a large number of reported cases that it would be a work of supererogation to repeat the process in the instant case. In the case of
 
 Lorain St. Rd. Co.
 
 v.
 
 Public Utilities Com.,
 
 113 Ohio St., 68, at page 78 of the opinion, 148 N. E., 577, the cases decided prior to June, 1925, were reviewed and a general rule declared. The rule therein declared when applied to the instant case leaves no doubt that the Cleveland charter provisions would prevail, even if Section 4227-12, General Code, had not
 
 *275
 
 been enacted. The following cases are the leading cases decided by this court that have held the charter provisions to prevail over conflicting general laws:
 
 State, ex rel. City of Toledo,
 
 v.
 
 Lynch, And.,
 
 88 Ohio St., 71, 102 N. E., 670, 48 L. R. A. (N. S.), 720, Ann. Cas. 1914D, 949;
 
 Fitzgerald
 
 v.
 
 City of Cleveland,
 
 88 Ohio St., 338, 103 N. E., 512, Ann. Cas. 1915B, 106;
 
 State, ex rel. Civil Service Comm.,
 
 v.
 
 Edwards,
 
 90 Ohio St., 305, 107 N. E., 768;
 
 Billings
 
 v.
 
 Cleveland Ry. Co.,
 
 92 Ohio St., 478, 111 N. E., 155;
 
 State, ex rel. Taylor,
 
 v.
 
 French,
 
 96 Ohio St., 172, 117 N. E., 173, Ann. Cas. 1918C, 896;
 
 Switzer
 
 v.
 
 State, ex rel. Silvey,
 
 103 Ohio St., 306, 133 N. E., 552;
 
 Reutener
 
 v.
 
 City of Cleveland,
 
 107 Ohio St., 117, 141 N. E., 27;
 
 Murphy
 
 v.
 
 City of Toledo,
 
 108 Ohio St., 342, 140 N. E., 626.
 

 It is insisted, however, that by virtue of Section 1/ of Article II only the Legislature can provide the procedure for invoking a municipal referendum. That section provides:
 

 “The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter
 
 provided by law.”
 

 Counsel for plaintiff insist that “law” can refer only to' an act of the General Assembly.
 

 "When Section
 
 If
 
 was framed by the convention of 1912, local self-government and municipal charters had been in operation for many years in some of the western states of the Union. The principle pf the initiative and referendum as set forth in Section 1 of Article II and the home rule provisions of Article XVTII of the Constitution of 1912 do not
 
 *276
 
 materially differ from the provisions of the constitutions theretofore enacted in the western states. When those provisions were adopted, the interpretations of the courts of those states in decisions rendered prior to 1912 were likewise adopted by implication. Quite uniformly, and, so far as we have been able to ascertain, without exception, the courts of those states having municipal charters with powers of local self-government have declared that a city charter enacted by the voters of a municipality is a “law” as much as if it were enacted by the Legislature of the state. The following cases support that doctrine:
 
 Rothschild
 
 v.
 
 Bantel, Treas.,
 
 152 Cal., 5, 91 P., 803, decided September 14, 1907;
 
 Schigley
 
 v.
 
 City of Waseca,
 
 106 Minn., 94, 118 N. W., 259, 19 L. R. A. (N. S.), 689, 16 Ann. Cas., 169, decided November 13, 1908;
 
 People, ex rel. Martin,
 
 v.
 
 Worswick,
 
 142 Cal., 71, 75 P., 663, decided January 30, 1904;
 
 Socialist Party v. Uhl,
 
 155 Cal., 776, 103 P., 181, decided June 28, 1909;
 
 Mitchell
 
 v.
 
 Carter,
 
 31 Okl., 592, 122 P., 691, decided March 12, 1912;
 
 Graham
 
 v.
 
 Roberts,
 
 200 Mass., 152, 85 N. E., 1009, decided November 12, 1908;
 
 People, ex rel. Lawlor,
 
 v.
 
 Williamson,
 
 135 Cal., 415, 67 P., 504, decided January 28, 1902;
 
 Grant
 
 v.
 
 Berrisford,
 
 94 Minn., 45, 101 N. W., 940, 1133, decided December 30, 1904;
 
 State, ex rel. Ryan,
 
 v.
 
 District Court of Ramsey Co.,
 
 87 Minn., 146, 91 N. W., 300, decided July 18, 1902;
 
 Kansas City
 
 v.
 
 Marsh Oil Co.,
 
 140 Mo., 458, 41 S. W., 943, decided July 6, 1897;
 
 People, ex rel. Jackson,
 
 v.
 
 Potter,
 
 47 N. Y., 375, decided January 30, 1872.
 

 We may not review those cases within the reasonable range of this opinion, but a review of many of them will be found in the opinion in the case of
 
 .Fits
 
 
 *277
 

 gerald
 
 v.
 
 City of Cleveland,
 
 88 Ohio St., 338, 103 N. E., 512, Ann. Cas. 1915B, 106, and those cases were to a very great extent the basis of the decision of this court in that case sustaining the doctrine that a charter provision enacted by the people has all the force and effect of law. That the decision in the
 
 Fitzgerald case
 
 is in entire harmony with the decisions of those states which have interpreted similar constitutional provisions is not doubted. The later decisions of this court have been in entire harmony with the
 
 Fitzgerald case.
 

 The question of the paramount force of municipal charter provisions within the range of a proper exercise of local self-government over conflicting provisions in the general laws of the state has been so often discussed and so uniformly decided by this court that we shall not further discuss the matter upon principle, but will rest the judgment upon this branch of the case upon the authorities already cited.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Day, Allen and Robinson, JJ., concur.
 

 Jones, J., not participating.