[Civ. No. 7867.   First Appellate District, Division One.—January 30, 1932.]

WALTER E. McGUIRE, Petitioner and Appellant, v. BEN-NING WENTWORTH, as Auditor, etc., Defendant and Appellant; DUNCAN MATHESON, as Treasurer, etc., Respondent.

Vincent W. Hallinan and Michael Riordan for Petitioner and Appellant.

Frank L. Fenton for Defendant and Appellant.

John J. O'Toole, City Attorney, for Respondent.

DOOLING, J., *pro tem.*—This is a proceeding for a writ of mandate brought originally in the superior court to compel defendants as Auditor and Treasurer of the city and county of San Francisco to withdraw a certain deposit of public money alleged to have been made in a bank of that city and county without complying with the provisions of the charter of the city and county governing such deposits. The respondent Treasurer's demurrer to the petition was sustained and the judgment appealed from followed.

The respondent Treasurer supports his action in making the deposit by pointing to a general statute upon the subject adopted in 1927 (Stats. 1927, p. 1389); and the dispute between the parties is as to whether this statute or the charter provisions control.

To the solution of this question a consideration of the constitutional and judicial history upon the subject will materially contribute. In *Yarnell* v. *City of Los Angeles,* 87 Cal. 603 [25 Pac. 767], our Supreme Court held that under the then existing constitutional provisions a city treasurer in California had no power or authority to deposit any public moneys in any bank or other private institution. Thereafter in 1906 section 16½, article XI, was added to our Constitution (see Stats. 1907, p. xxxv). That amendment, so far as material here, provided that: "All moneys belonging to the state, or to any county or municipality within this state, may be deposited in any national bank

or banks . . . in such manner and under such conditions as may be provided by law." A general statute having been enacted to effectuate this constitutional amendment, the Treasurer of the city and county of San Francisco, purporting to act pursuant thereto, made such a deposit. In *Rothschild* v. *Bantel*, 152 Cal. 5 [91 Pac. 803, 805], the Supreme Court held that the deposit of the funds of a charter city was a municipal affair and that the then existing provisions of the San Francisco charter prohibiting such deposits were paramount in San Francisco to the general law on the subject. In view of the subsequent changes in section 16½, article XI, of the Constitution, it is fruitful to consider the reasoning of the Supreme Court in the Rothschild case.

The court first conceded the power of the people by constitutional enactment to delegate to the legislature control over any municipal affair in the following language:

"It is of course true, as urged by respondent, that the people of the state, who by a provision of the constitution have granted to freeholders' charter cities this immunity from legislative interference with charter provisions relative to municipal affairs, may in like manner take away the same in whole or in part, and leave with the state legislature the power to enact laws which would have the effect of suspending the force of any or all charter provisions."

Having recognized the power of the people by constitutional amendment to take away any part of the supremacy of charter cities in municipal affairs, the Supreme Court in the Rothschild case proceeded to examine the language of section 16½, article XI, of the Constitution, to determine whether in that case they had done so. The court found no such result to follow from the language of that constitutional provision: "in such manner and under such conditions as may be provided by law", saying that these words in the Constitution "are simply a limitation upon the permission before given, the effect thereof being that such deposits may be made only in the manner and under the conditions provided by such laws as may properly be enacted in regard thereto. . . . But when we come to the matter of the safe keeping of the moneys of a municipality having a freeholders' charter, such charter, 'the organic law'

of the city (Const., art. XI, sec. 8), so far as it speaks upon the matter at all, is, subject to the constitution, the paramount law, and, except as provided in the constitution, nothing contrary thereto can be 'provided by law'. In such a case the charter provision is the 'law' referred to in the constitutional provision.''

The court then adds, significantly in view of the subsequent amendment to section 16½, article XI, of the Constitution:

''The provision is not that the deposit may be made in such manner and under such conditions as may be provided by the legislature, or by any particular kind of law, but is simply 'as may be provided by law'.''

In 1922 section 16½, article XI, of the Constitution, was amended (see Stats. 1921, p. 2189) so as to authorize the deposit of public moneys ''in such manner and under such conditions as may be provided by any law adopted by the people under the initiative or by a two-thirds vote of each house of the legislature and approved by the governor and subject to the referendum; provided, that the laws now governing the deposit of such moneys shall continue in force until such laws shall be amended, changed or repealed as in this section authorized''.

Thus was brought about the very condition to the absence of which our Supreme Court adverted in the sentence last quoted from its opinion in the Rothschild case. This amendment does provide that the deposit may be made in such manner and under such conditions as may be provided, not ''by law'', but by a particular kind of law enacted in a particularly designated manner.

The effect of this amendment is to limit the exercise of the power to deposit public moneys to the manner and conditions provided by such laws as may be adopted in one of two manners, i. e., under the initiative, or by a two-thirds vote of each house of the legislature, etc. It further continues existing laws on the subject in effect until ''repealed as in this section authorized''. So that neither general law nor charter provision on that subject could thereafter be repealed by a simple majority vote of the legisature or amendment to the charter as theretofore, but only in the specific manner authorized by this constitutional amendment.

■ Both on the reasoning of the Supreme Court in the Rothschild case and under general principles the statute of 1927 adopted by the required two-thirds vote of each house of the legislature must now be held to be the controlling law upon the subject in charter cities, regardless of previously existing or subsequently adopted charter provisions in conflict therewith. This is so because section 16½, article XI, as now amended, not only constitutes the sole authority for depositing public moneys, but limits the exercise of that authority to the manner and conditions provided by such laws as may be adopted in one of the specific modes therein set forth. This being a specific constitutional enactment on a specific subject must control the general constitutional provision on municipal affairs in so far as the two conflict.

"If there is a special provision upon one branch of a subject, it will prevail over a general provision relating thereto, if the two are irreconcilable, unless the contrary intent appears from the context." (*Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441, 449 [166 Pac. 351, 354]; *In re Mascolo*, 25 Cal. App. 92 [142 Pac. 903]; *Martin* v. *Board of Election Commrs.*, 126 Cal. 404, 411 [58 Pac. 932].)

■ Appellants point to the arguments to the voters published at the time of the submission of this constitutional amendment to the people and argue from the fact that they are silent upon the subject of the effect of the amendment upon charter cities that no change in their powers was intended; but while the arguments to the voters may be looked to in aid of the construction of doubtful language, "such aids to the interpretation of a written document while available to the courts are not at all to be considered as controlling, since whatever may have been the intent of the proponents of a particular change in a law must at the last analysis be derived from the language of the proposed enactment purporting to effect such change". (*Fay* v. *District Court of Appeal*, 200 Cal. 522, 537 [254 Pac. 896, 903]; *Pacific Gas & Elec. Co.* v. *Roberts*, 176 Cal. 183, 192 [167 Pac. 845].)

■ Appellants likewise invoke the settled doctrine against repeals by implication, but this rule likewise has no application where the meaning of the amendment is plain. (*Sevier* v. *Riley*, 198 Cal. 170, 176 [244 Pac. 323].)

We are satisfied that the language used in the constitutional amendment in question is too clear to admit of recourse to any extrinsic aids to arrive at its proper construction.

The judgment is therefore affirmed.

Knight, Acting P. J., and Cashin, J., concurred.