Bell, J.
The capacity of relator as a taxpayer to maintain this action was decided by both courts below in relator’s favor, and we believe properly so. Brissel et al., Commrs., v. State, ex rel. McCammon, 87 Ohio St., 154, 100 N. E., 348. See, also, the distinction between the enforcement of private rights and that of public rights as delineated by Longworth, J., in State, ex rel., v. Henderson, 38 Ohio St., 644, 648.
We are also of the opinion that the courts below were correct in holding that relator should not be denied relief for the sole reason that the prayer of his petition seeks an election on a particular day. The prayer of the petition asks also “for all other relief that is proper in such cases, either at equity or law.” Neither the relator nor the court can compel council to fix a particular date for holding an election. Where the allegations of a petition are sufficient to warrant the general relief sought, the form of the prayer is immaterial, and, where the prayer is for general relief, the court will shape its judgment according to the equity of the case and grant any relief warranted by the allegations of the petition. Riddle v. Roll, 24 Ohio St., 572; State, ex rel. Keyser, v. Babst, 101 Ohio St., 275, 128 N. E., 140; State, ex rel. Masters, v. Beamer et al., Board of Education, 109 Ohio St., 133, 141 N. E., 851.
Respondents contend, and a majority of the Court of Appeals held, that the entire initiative petition filed by relator is defective because the affidavit accompanying each part petition does not recite that the circulator believes each signer thereof is an elector of the city of Cincinnati, as required by Section 731.31, Revised Code. The affidavit recites in part: ‘ ‘ The foregoing petition containing the signatures of.electors.” However, at the top of the petition, printed in large bold type, appears the following language: “Petition of electors of the city of Cincinnati * * *.”
*304 We are in accord with the reasoning of Judge Weber of the Common Pleas Court and approve the following language used by him in regard to identification of the signers:
“If the above parts of the form of the petition used in this case are read together and it is also taken into consideration that the precinct and ward of the signer must be given and is easily checked, the conclusion must be reached that adding the words ‘of the city of Cincinnati’ after the word ‘electors’ in the affidavit, would in no way furnish protection against fraudulent or otherwise legal faults in the petition. To invalidate the entire petition, containing more than 32,000 names, for this cause would be an unwarranted effort to prevent rather than promote the exercise of the constitutional right to initiate this amendment to the charter.”
Section 731.32, Revised Code, provides:
“Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any ordinance or measure shall, before circulating such petition, file a verified copy of the proposed ordinance or measure with the city auditor or the village clerk.”
Although the city of Cincinnati has neither an auditor nor clerk, the finance director of Cincinnati performs the duties customarily performed by such designated officials. Respondents contend, and a majority of the Court of Appeals held, that, because a verified copy of the “proposed ordinance or measure” was not filed, before circulating the petition, with the finance director, the petition is invalid. This position is fortified by the decision of this court in State, ex rel. Poor, v. Addison et al., Council, 132 Ohio St., 477, 9 N. E. (2d), 148, which held that “the proposed amendments to the charter of Columbus under consideration in the case at bar come within the term ‘other measures’ in the foregoing section [Section 4227-1, General Code; now Section 731.28, Revised Code].”
Although the writer of this opinion entertains some doubt as to the soundness of the decision in the Poor case if applied as broadly as it was by the majority of the Court of Appeals in this case, he is willing to concede that under that decision certain sections of the Revised Code may apply to proposed *305 charter amendments to the extent, at least, that they do not conflict with provisions of the Constitution. And this conrt rightly fonnd in the Poor case that there is no conflict between the provisions of the Constitution and the statutory requirement of placing the ward and precinct after the name of a signer of an initiative petition.
Section If, Article II of the Constitution, insures the right of initiative and referendum as follows:
“The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter he authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law. ’ ’
This court has recently held that this constitutional provision is not self-executing, and that the procedure incident to the exercise of the right must be set out by statute. Dubyak, Jr., v. Kovach, Mayor, 164 Ohio St., 247, 129 N. E. (2d), 809. See, also, Shryock, a Taxpayer, v. City of Zanesville, 92 Ohio St., 375, 110 N. E., 937; Dillon v. City of Cleveland, 117 Ohio St., 258, 158 N. E., 606.
Section 3, Article II of the Charter of the City of Cincinnati, provides that “the initiative and referendum powers * * * shall be exercised in the manner provided by the laws of the state of Ohio.” Eespondents contend that, under this provision of the charter, the state statute requiring submission of the proposed ordinance or measure to the city auditor or village clerk (finance director) must be applied. This position is tenable only if the statute (Section 731.32, Revised Code) and the constitutional provisions involved are not in conflict. See State, ex rel. Portmann, v. City Council of City of Massillon, 134 Ohio St., 113, 16 N. E. (2d), 214, where, in the opinion by Gorman, J., it is said: “We have held that petitions in the nature of an initiative, not a referendum, to amend a municipal charter should comply with the statutory provisions contained in Section 4227-1 et seq., General Code, if not inconsistent with the provisions of the Constitution. State, ex rel. Poor, v. Addison et al., Council, 132 Ohio St., 477, 9 N. E. (2d), 148.” (Emphasis added.)
*306 The constitutional provisions for adopting and amending city charters are found in Sections 8 and 9 of Article XVIII.
Section 8 provides, in part:
“The legislative authority of any city or village may by a two-thirds vote of its members, and upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question, ‘shall a commission be chosen to frame a charter.’ ”
Section 9 provides, in part:
“Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such, proposed amendment, shall be submitted by such legislative authority. The submission of proposed amendments to the electors shall be governed by the requirements of Section 8 as to the submission of the question of choosing a charter commission * * V’
This court held in State, ex rel. Hinchliffe, v. Gibbons et al., City Council, 116 Ohio St., 390, 156 N. E., 455, that a petition proposing an amendment to the charter of a city, under the provisions of Section 9, Article XVIII, must be submitted to the city council, and that it is the duty of council to determine the validity of the petition. See, also, State, ex rel. Waltz, a Taxpayer, v. Michell, 124 Ohio St., 161, 177 N. E., 214.
The very plain wording of Section 9, Article XVIII, places the duty to submit a proposed amendment to the electors upon the council and the council alone. It provides further that the submission shall be governed by the requirement of Section 8, Article XVIII, that the council shall provide by ordinance for the submission to the electors. It is clear that once a petition for a charter amendment containing sufficient valid signatures is filed with the council, the only body or person thereafter charged with any duty of submitting the question to the electors is the city council.
Let us now consider Section 731.32, Revised Code, and related sections, in the light of the provisions of Section 9, Article XVIII of the Constitution.
Section 731.32, Revised Code, provides that a verified copy *307 of tlie proposed ordinance or measure must be filed with, the city auditor or village clerk prior to circulating the petition. Section 731.28, Bevised Code, provides that, when a petition signed by the required number of electors is filed with such auditor or clerk, he shall after ten days certify the proposed ordinance or measure to the board of elections.
If the provisions of these sections are applied to a proposed amendment to a city charter, a conflict with Sections 8 and 9, Article XVIII of the Constitution, is readily apparent. Under the provisions of the Constitution, the petition is filed with the council; the auditor or clerk never sees it and has no duty to perform in regard to it. Under the provisions of the statute, the petition is filed with the auditor or clerk who retains it; the council never sees it and has no duty to perform in regard to it.
Under the Constitution and the HinchUffe case, supra, the council determines the validity of the petition, and, where it determines the petition to be valid, council has a mandatory duty to submit the question to the electors. Under the statutory provisions the text of the proposed ordinance or measure must be certified to the board of elections by the auditor or clerk; it is then the mandatory duty of the board of elections and not council to submit the question to the electors.
Because of this conflict between the constitutional and statutory provisions, we are of the opinion that a failure to comply with the requirement of Section 731.32, Bevised Code, that the proposed charter amendment, be filed with the city auditor or village clerk (finance director) prior to circulating the initiative petition, does not invalidate the petition.
The only remaining question is whether the petition filed with the city council contains a sufficient number of signatures.
Following the decision of this court in the Walts case, supra, the General Assembly added the following language to Section 4227-4, General Code (Section 731.31, Bevised Code):
“Tn determining the sufficiency [later changed to “validity”] of any such petition all signatures which are found to be irregular shall be rejected, but no petition shall be declared invalid in its entirety when one or more signatures are found to be invalid, except when the number of valid signatures shall be found to be less than the total number required.”
*308 It is obvious, under this language, that no signature can be rejected without a finding that it is invalid. It was aptly stated by Judge Weber:
“ * * * a finding means that there must be some final determination, after examination, that the signature is infected with some plausible legal defect. And considered, as it must be, in connection with the sentence which immediately follows that, ‘the petitions and the signatures upon such petitions shall be prima facie presumed to be in all respects sufficient.’
“The added provision certainly means that there can be no assumption that any signature not completely and finally examined is invalid. On the contrary, any signature which is not examined and rejected for some plausible legal defect must be presumed to be valid and counted as such. It certainly does not mean that only part of the signatures can be examined and then by deducting those actually found to be invalid from the number of those examined it can be concluded that the difference is all of the valid signatures. On the contrary, to ascertain the number of valid signatures, the number of signatures actually found to be invalid, after a complete and final examination, must be deducted from the total number of signatures on the entire petition; the signatures which, for any reason, have not been examined must be presumed to be valid.”
Prom the maze of figures appearing in the record, it can be concluded that from 9,000 signatures appearing on 228 part petitions to 10,790 appearing on 237 part petitions were not examined by city council. Giving to those not examined the prima facie presumption of validity required by Section 731.31, Revised Code, and adding them to the number of valid signatures found by council, the number of signatures aggregates far more than that required to impose upon the city council the mandatory duty of submitting the question to the electors.
For the foregoing reasons, the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Wbygahdt, C. J., Zimmerman, Skeel, Matthias and HERBERT, JJ., concur.