THE STATE, EX REL. CORRIGAN, *v.* PERK, COUNTY AUDITOR, ET AL.

(No. 69-307—Decided June 18, 1969.)

Mr. John T. Corrigan, prosecuting attorney, Mr. John L. Dowling and Mr. A. M. Braun, for relator.

Messrs. Power, Griffith, Jones & Bell, Mr. Gerald Donahue, Messrs. Metzenbaum, Gaines, Krupansky, Finley & Stern, Mr. Robert B. Krupansky, Mr. Donald Robiner and Mr. Willis J. Zangerle, for respondents.

Per Curiam. Section 1g of Article II of the Ohio Constitution provides in pertinent part:

"* * * Each signer of any * * * referendum petition must be an elector of the state and shall place on such petition after his name the date of signing and his place of residence. A signer residing outside of a municipality shall state the township and county in which he resides. A resident of a municipality shall state in addition to the name of such municipality, the street and number, if any, of his residence and the ward and precinct in which the same is located. * * *"

Section 305.32 of the Revised Code, provides in part:

"* * * Each signer of any such [referendum] petition must be an elector of the county in which the election, upon the resolution referred to by such referendum petition, is to be held. and shall place on such petition, after his name, the date of signing, his place of residence, including street and number, if any, and the ward and precinct, if any. * * *"

The first paragraph of the syllabus of Lynn v. Supple (1957). 166 Ohio St. 154, 140 N. E. 2d 555, reads:

"Where an applicable statute provides that 'each signer of * * * [a referendum] petition * * * shall place

on such petition * * * [his] ward and precinct,' it is essential to the validity of a signature on such a petition of an elector of a municipality where registrations are by precincts that such signature be followed by the correct precinct of the signer. (*State, ex rel. Poor,* v. *Addison et al., Council,* 132 Ohio St. 477, followed.)'' (Emphasis original.)

In an opinion ''by the court'' in *State, ex rel. Poor,* v. *Addison* (1937), *supra* at 481, 9 N. E. 2d 148, it is stated:

''* * * the law is clear that the ward and precinct, whether written in by the signer himself or by someone else under his direction, must follow the signature of the signer in a petition * * *.''

In the face of the foregoing authority, respondents argue that the requirement that ward and precinct appear on referendum petitions serves no useful purpose and is an unreasonable burden upon the constitutional right of referendum. They further advocate that the word ''shall'' as used in Section 305.32, Revised Code, must be construed as ''should'' or ''may.'' Finally, they assert that this court has declared Section 1*g* of Article II of the Ohio Constitution applicable only to state-wide legislation, thereby rendering it devoid of authority in this case. (*See, e. g., Dillon* v. *Cleveland* (1927), 117 Ohio St. 258, 158 N. E. 606.)

Irrespective of whether Section 1*g* governs only state-wide referendum, which need not be decided here, its presence in the Constitution clearly demonstrates that the people considered ward and precinct requirements to be of sufficient importance to directly include them in their fundamental law, if only for state-wide issues. Unless such a requirement contravenes the federal Constitution, it must stand as a valid expression of the will of the people in the exercise of their right of self-government, irrespective of what this court may think of its wisdom or necessity.

We find no federal constitutional provision or principle which is offended by the requirements of Section 1*g* of Article II of the Ohio Constitution or Section 305.32, Revised Code, that ward and precinct appear on referendum petitions. Our ruling in *State, ex rel. Patton,* v. *Myers* (1933), 127 Ohio St. 95, 186 N. E. 872, that matters other

4

than the signer's own name need not be personally affixed by the signer to a referendum petition under Section 1g, minimizes the argument that such a requirement is an unreasonable burden upon the individual signer. We conclude that a statute which follows a requirement clearly laid down by the people and extends this requirement to local issues must be considered mandatory and constitutionally valid. Accordingly, those signatures of municipal residents which were filed with respondent Perk without ward and precinct designation, are invalid. Since an insufficient number of valid signatures remains to allow placement of the issue on the ballot, even if all remaining were to be determined valid, the writ of prohibition is allowed.

*Writ allowed.*

TAFT, C. J., GRAY, MATTHIAS, SCHNEIDER and HERBERT, JJ., concur.

O'NEILL and DUNCAN, JJ., dissent.

GRAY, J., of the Fourth Appellate District, sitting for ZIMMERMAN, J. Because of the inability, "by reason of illness," of JUSTICE CHARLES B. ZIMMERMAN "to hear, consider and decide" this cause, JUDGE GRAY of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE ZIMMERMAN, and JUDGE GRAY did so and heard and considered this cause prior to the decease of JUSTICE ZIMMERMAN on June 5, 1969.

O'NEILL, J., dissenting. The sole question in this case may be stated as follows: Where a qualified registered voter signs his name and correct address to a referendum petition, does the fact that the ward and precinct in which he resides do not appear on the petition following his name make his valid signature invalid?

The majority opinion holds that it does, but states no reasons in support of that holding.

I concur in the dissenting opinion of Justice Duncan.

The instant action is in prohibition. The relator seeks an order from this court which would deny to the electorate of Cuyahoga County the right to vote on the question of whether local county-wide sales and use taxes, enacted by the county commissioners for local government purposes, shall be imposed upon the citizens of Cuyahoga County.

The sole ground upon which the relator asks this court to deny the electorate of Cuyahoga County their right to vote upon that question is that the wards and precincts in which some of the signers of these referendum petitions reside do not appear upon the petitions.

This is an attempt to deny the right of the people to vote on a local tax for local government purposes, based upon a meaningless super-technicality.

No question is raised about the validity of the signatures upon the petitions, and none is raised about the accuracy of the address of any petition signer. The address of an elector, of course, determines the ward and precinct in which he resides.

No question is raised concerning the Cuyahoga County residence of any petition signer.

It is conceded that the master list kept by the Board of Elections of Cuyahoga County, for the purpose of checking the validity of petitions filed with the board, lists the registered voters of the county alphabetically and not by ward and precinct.

It is conceded that the records of the Board of Elections of Cuyahoga County contain the ward and precinct of each registered voter.

It is conceded that the ward and precinct of the petition signer is not required on the petition in order for the board of elections to check whether the person who signed his name and address on the petition is a registered voter of Cuyahoga County.

It is also conceded that since these petitions seek a referendum upon a county-wide tax, every registered voter of Cuyahoga County, regardless of the ward or precinct in which he resides, is eligible to vote upon the question should it be submitted to the electorate.

There is no question raised concerning the eligibility

of the circulators of the petitions, the validity of their oaths or signatures, or their conduct in securing signatures on the petitions.

The case of *State, ex rel. Patton,* v. *Myers* (1933), 127 Ohio St. 95, was a mandamus action brought to compel the Secretary of State to direct the boards of elections of the 88 counties *that signers must personally fill in their wards, townships or precincts on referendum petitions.*

The language of the Constitution which was controlling in that case is substantially the same as the language of Section 305.32, Revised Code, which is controlling in the instant case. In that case, this court held that a signer of a referendum petition must personally sign his own name, *but need not personally place on the petition his ward and precinct.*

That court did not have before it in that case the question which is before the court in the instant case.

In *Stevens* v. *Board of Elections of Henry County* (1957), 108 Ohio App. 37, the Third District Court of Appeals had before it a case similar to the instant case. In that case, the street numbers of the residence of petition signers were omitted from the referendum petition. Paragraph two of the syllabus in that case reads as follows:

"Where a referendum petition signer, an admittedly qualified elector, in a nonregistration area gives after his signature the name of his street but fails to give the number of his residence, such failure does not invalidate his signature."

In *State, ex rel. Wolson,* v. *Kelly* (1966), 6 Ohio St. 2d 67, a candidate for Judge of the Court of Appeals of the Sixth Appellate District omitted the precinct in which he resided from his declaration of candidacy. Section 3513.07, Revised Code, sets forth the requirements for such petition. This court stated in the opinion in that case:

" 'Voting residence' is defined by Section 3501.01(J), Revised Code, as follows:

" ' "Voting residence" means that place of residence of an elector which shall determine the precinct in which he may vote.'

"Here the relator set forth his residence address. That

residence address determines the precinct in which he can vote.''

This court held the declaration of candidacy valid.

In *State, ex rel. Ellis,* v. *Sulligan* (1966), 6 Ohio St. 2d 65, the relator filed a declaration of candidacy and petition for nomination as a candidate for the office of Judge of the Common Pleas Court with the Mahoning County Board of Elections, which petition was rejected as being invalid because the relator, in his declaration of candidacy, failed to indicate the county in which he wished to become a candidate. This court held that the relator had sufficiently complied with the statutory requirements and allowed a writ ordering the board to place his name on the ballot. The same reasoning was used in *State, ex rel. Donofrio,* v. *Henderson* (1965), 4 Ohio App. 2d 183.

In the instant case, no question is raised concerning the accuracy of the address which follows each signature on the petitions. The residence address of each petition signer determines the precinct in which he can vote and that precinct and ward are listed in the master list in the records of the board of elections. There is no language in Section 305.32, Revised Code, which states that an otherwise valid signature is to be held invalid because the ward and precinct of the petition signer do not appear on the petition following his signature.

It is admitted that voters do not know the ward and precinct in which they reside.

*The position of relator, and respondents Carney and Duffy in their separate answer supporting relator, is that someone—signer, circulator, committee, or designee of a signer, circulator, or committee—must go to the board of elections and engage in the meaningless ritual of copying from the records of the board of elections onto the petitions which are about to be filed with the board of elections, the ward and precinct of the signers of the petitions.*

No contention is made that there is any fraud, or that the omission of the ward or precinct on the petition can lead to fraud. No contention is made that the ward or precinct is required in order to check whether the signer is a registered voter of the county. No contention is made

that the ward or precinct is required by sound public policy. No allegation is made that the requirement of the ward or precinct on the petitions serves any useful purpose. In fact, no reason is advanced in the majority opinion, in the petition or brief of relator, or in the separate answer of respondents Carney and Duffy, as to why such a rule of law is required.

What purpose can possibly be served by requiring such a time-consuming, expensive and meaningless ritual to be engaged in, other than the questionable purpose of preventing a referendum on a local tax issue from being submitted to the electorate and thereby denying to the electorate their right to vote upon that question.

This is an instance where the matter omitted from the petitions is in the records of the board of elections.

See *State, ex rel. Buchanon,* v. *Stillman* (1967), 12 Ohio St. 2d 13; *State, ex rel. Blackwell,* v. *Bachrach* (1957), 166 Ohio St. 301; *State, ex rel. Abrams,* v. *Bachrach* (1963), 175 Ohio St. 257; *State, ex rel. Janasik,* v. *Sarosy* (1967), 12 Ohio St. 2d 5.

Under the circumstances of this case, it is not reasonable to hold that the members of the General Assembly intended that a signature on a referendum petition, otherwise valid, should be considered invalid because the ward and precinct of the petition signer do not appear on the petition following the signature.

Members of the General Assembly are familiar with petitions and know that voters do not know the ward and precinct in which they reside.

It is not a reasonable construction of the language used in Section 305.32, Revised Code, to conclude that the members of the General Assembly deliberately included this super-technicality in the law in order to curb the use of the referendum.

The relator and the majority opinion rely upon *State, ex rel. Poor,* v. *Addison* (1937), 132 Ohio St. 477, which is cited as authority for the decision in *Lynn* v. *Supple* (1957), 166 Ohio St. 154.

A rule of law, however, is not sound unless the reason upon which it is based is sound.

The only support in the opinion in *Poor, supra,* for the holding in that case is stated at page 480. There, the court states that under the law when a person registers he must state his ward and precinct, and that no person is entitled to vote or sign a referendum petition unless he is a registered elector.

This is an irrelevant, make-weight argument in support of the conclusion in that case. It is a *non-sequitur.* Lists of registered voters may have been kept by ward and precinct at that time, and it is possible that there was not available a county-wide master list of registered voters which included the ward and precinct of each. In 1937, there may have been some unstated reason for enforcing the super-technicality which the court insisted upon in that case. Today, however, no reason exists. *No reason for such a rule is asserted in the petition and brief of relator, or in the answer of respondents Carney and Duffy who support relator's petition, or in the majority opinion.*

The Constitution guarantees the right of referendum to the electorate. Sections 305.31 to 305.41, inclusive, of the Revised Code, were enacted to provide specifically for a referendum with regard to local taxes enacted for local government purposes by county commissioners.

In the absence of any reason being advanced for invalidating an otherwise valid signature upon such a super-technicality, this court should hold that on a referendum petition the omission of the ward and precinct following the signer's name and correct address does not invalidate that signature.

DUNCAN, J., concurs in the foregoing dissenting opinion.

DUNCAN, J., dissenting. This case brings before us a question of most serious import.

Shall an elector be denied the right to exercise his elective franchise merely because he does not know the ward and precinct in which he resides?

It should be noted at the outset that counsel agree, and the fact is one of which the court may take judicial notice,

10

that the ordinary voter does not know in which ward and precinct he resides.

The power to petition, for referendum, which is reserved to the people under our Constitution, is a basic and fundamental right, and is a basic part of the elective franchise. It is so basic and fundamental that the Constitution itself provides that "Laws may be passed to facilitate their operation, *but in no way limiting or restricting either such provisions or the powers herein reserved.*" Section 1*g*, Article II, Ohio Constitution. (Emphasis added.)

However, both the Constitution and the statutes here involved provide that a signer of a referendum petition *shall* place his ward and precinct after his name.

The problem before this court is whether the failure to do so invalidates the signature of the elector.

In other words, does the use of the word "shall" make this requirement mandatory, so that the absence of this information will invalidate the signature?

This becomes a matter of statutory and constitutional construction.

In interpreting and construing both statutes and the Constitution, one of the most basic and fundamental precepts which a court is required to follow is to give a fair and reasonable construction to the language therein, and to avoid a narrow or unreasonable construction which would lead to absurd or unreasonable consequences.

As was said in the second paragraph of the syllabus in *Castleberry* v. *Evatt*, 147 Ohio St. 30:

"In the construction of constitutional provisions or legislative enactments unreasonable or absurd consequences, should, if possible, be avoided." See, also, 10 Ohio Jurisprudence 2d 137, Constitutional Law, Section 36.

This is especially true in relation to provisions of law relating to the rights of elective franchise. Such provisions must be interpreted to facilitate and promote, not to impair, the right of the individual to exercise his elective franchise.

It is true that courts ordinarily construe the word "shall" as having a mandatory meaning. However, where such construction would be detrimental to the public, it

can be, and it has been, determined that in certain instances "shall" is purely directory. 50 Ohio Jurisprudence 2d 30 and 33, Statutes, Sections 20 and 22.

This case presents one of the instances where the only reasonable construction that can be given to "shall" is that it is merely directory. To hold otherwise would, in light of the conceded facts, be an unreasonable and absurd construction.

To hold that the insertion in the petition of the ward and precinct of each signer is mandatory is to impose a duty which it is conceded the ordinary citizen cannot fulfill.

A construction that imposes a duty, which it is conceded cannot be fulfilled by the ordinary voter, is manifestly unreasonable. To construe the requirement in the instant case as mandatory imposes a duty which effectively deprives the elector of a right which the Constitution itself provides cannot be impaired.

The only reasonable construction of the requirement of Section 305.32, Revised Code, that "Each signer * * * shall place * * * after his name * * * the ward and precinct * * *," is that it is directory only and that the failure of a signer to include the ward and precinct in a referendum petition does not invalidate the signatures.

This conclusion is strengthened by the fact that in present day elective processes the inclusion of the ward and precinct ordinarily serves no useful purpose. The only time there would be a necessity for this information is in situations where the electoral action is directed to a specific ward or precinct. In city-wide, county-wide or state-wide elections, no purpose would be served.

Obviously, the framers of the Constitution inserted the requirement of ward and precinct merely for the purpose of identification. See Proceedings and Debates of the Constitutional Convention (1912), page 945, where it was stated by Mr. Cassidy that the requirement of ward and precinct "was to enable the signers of these petitions to be easily identified." Such information is not necessary, or, according to respondents, is it used in processing signatures. Where such information is neither necessary nor useful in

12

processing the signatures on the petition, it is patently unreasonable to hold that the absence of such information invalidates the signature. Neither logic nor reason dictates that result. On the contrary, the only tenable construction would be to hold that the absence of such information does not affect the validity of the signatures.

I am aware that certain decisions of this court disagree with the position I have taken. Ordinarily, I am a firm believer in the sanctity of legal decisions and *stare decisis*. However, I also believe, as Justice Brandeis said in his dissenting opinion in *Washington* v. *W. C. Dawson & Co.*, 264 U. S. 219, 238:

"*Stare decisis* is ordinarily a wise rule of action. But it is not a universal, inexorable command."

Here, we are not concerned with a rule of property under which rights have vested, or with a prescribed rule of conduct on which many have relied in shaping their actions. To hold that the failure to insert the ward and precinct after a signer's name on a petition does not invalidate the signature would be a salutary rule and have no deleterious result, whereas, the decision of the majority in this case will effectively deprive many persons of their constitutional right to require that certain legislation be submitted to the vote of the people. For these reasons, I cannot agree with the majority and believe that the writ of prohibition should be denied.

O'NEILL, J., concurs in the foregoing dissenting opinion.