THE STATE, EX REL. JEFFRIES ET AL., APPELLANTS, *v.* RYAN ET AL., APPELLEES.

(No. 9525—Decided November 18, 1969.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman* and *Mr. Peter J. Gee,* for appellants.

*Messrs. Smith & Tobin, Mr. C. Howard Johnson,* prosecuting attorney, and *Mr. Tommy L. Thompson,* for appellees.

LEACH, J. Relators, appellants herein, appeal on questions of law from a judgment of the Common Pleas Court of Franklin County, dismissing their petition for a writ of mandamus, seeking to require the board of elections and the board of county commissioners to submit a certain zoning amendment to the electors of the unincorporated area of Jackson Township, under the provisions of Section 303.12, Revised Code.

On April 9, 1968, the board of county commissioners approved the application of Greenlawn Realty Company for a change of zoning of a tract of land in Jackson Township from a Rural district to a Planned Mobile Home district.

Section 303.12, Revised Code, with reference to such zoning amendments, provides:

"* * *

"Such amendment or supplement adopted by the board shall become effective in thirty days after the date of such adoption unless within thirty days after the adoption of the amendment or supplement there is presented to the board of county commissioners a petition, signed by a number of qualified voters residing in the unincorporated area of the township or part thereof included in the zoning plan equal to not less than eight per cent of the total vote cast for all candidates for governor in such area at the last preceding general election at which a governor was elected, requesting the board to submit the amendment or supplement to the electors of such area, for approval or rejection, at the next primary or general election.

"* * * *"

A petition, requesting the board of county commissioners to submit the zoning amendment to the electors of Jackson Township for approval or rejection, was filed with the board of county commissioners on May 6, 1968. Since 1,176 votes were cast for Governor in 1966 in Jackson Township, such a petition would require 95 valid signatures. The petition, comprised of 7 part petitions, contained a total of 516 signatures of persons who on the petition "represent that they are qualified voters residing

in the area of Jackson Township" and who, in such petition, requested the board of county commissioners "to submit to the electors residing in the unincorporated area of Jackson Township * * * for approval or rejection" the zoning amendment of April 9, 1968, such request being made "pursuant to Section 303.12 of the Revised Code of Ohio."

On May 7, 1968, the county commissioners forwarded the petition to the board of elections, with the request that its validity and legal sufficiency be determined.

The board of elections, by letter of August 8, 1968, notified the county commissioners that the petition was sufficient, containing 161 "valid signatures" and 355 "invalid signatures." This conclusion apparently was reached by the board of elections by invalidating all signatures which, even though otherwise valid, did not contain after the name the (1) date of signing and (2) the rural route number, post office address or township (although followed by a street and number and although the petition contained above such signatures the statement that "The undersigned represent that they are qualified voters residing in the unincorporated area of Jackson Township"). By opinion to the board of elections on July 22, 1968, the prosecuting attorney had expressed the opinion that the requirements of Section 3501.38 (C), Revised Code, would invalidate any signatures not followed by date of signature and by location of voting residence including "rural route number, post office address, or township."

As of August 8, 1968, however, the board of elections counted as valid signatures those followed by date of signature and those indicating a date of signature by use of ditto marks, where the signature was also followed by the "post office address" (Grove City, Ohio), most of these being indicated by the use of ditto marks. This action apparently was based upon the holding of the Court of Appeals for Mahoning County in *State, ex rel. Donofrio,* v. *Henderson* (1965), 4 Ohio App. 2d 183, referred to in the prosecuting attorney's opinion, that "the provisions of Section 3501.38 (C), Revised Code, have been complied

with when a signer of a nominating petition, or some other person under his authority and direction, uses ditto marks to indicate either the date of signing or the location of his voting address.''

Counsel for Greenlawn Realty Company, on August 7, 1968, had requested the board of elections to schedule a formal hearing, but this was denied by letter of August 14, 1968. On September 4, 1968, however, an evidentiary hearing was had before the county commissioners at which time counsel for Greenlawn established through the testimony of witnesses that the circulators of the petitions had been instructed that the placing of the full address (Grove City, Ohio) was unnecessary, and that the circulators did not know who put the ditto marks on the petition or when they were placed there; and that no specific discussion was had with any signer relative to authorization to place dates or ditto marks.

On the basis of this evidence, counsel for Greenlawn in effect argued by letter to the commissioners, dated September 9, 1968, that the insertion of the dates, followed by ditto marks, and the insertion of ditto marks under the words ''Grove City, Ohio'' (written in by a few signers) did not comply with Section 3501.38 (C), Revised Code, such not having been done ''under the authority and direction of the signer.'' He requested the commissioners to send the matter back to the board of elections for reconsideration. This, the commissioners did by letter of September 10, 1968.

By letter of September 20, 1968, the office of the prosecuting attorney advised the board of elections that ''a study of the transcript of the hearing before the Franklin County Board of Commissioners indicates that none of the circulators had authority to place the post office address and/or date on said petitions'' and that ''the petitions herein were not prepared in accordance with the relevant statutes of the state of Ohio * * *.'' On this basis, the board of elections by letter of September 25, 1968, advised the county commissioners that, based on the information in the transcript, it had determined that there were

only 3 signatures "which may be considered valid on the petition."

Relators then filed an action in the Common Pleas Court seeking a writ of mandamus. Hearing was had on February 27, 1969, at which time, by agreements, Greenlawn Realty Company was made an additional party respondent. In addition to the introduction of copies of the petition, the correspondence previously referred to, and the transcript of the hearing of September 4, 1968, before the county commissioners, the only other evidence consisted of a stipulation to the effect that relator s had subpoenaed 146 persons who would testify that each had signed in the presence of the circulator, that all writings on the petition except dates and ditto marks were written by them; and that "no conversation whatsoever between the circulator and the signer of the petition occurred in regard to the ditto marks * * * or the dates, but that they intended that they have a valid signature upon the referendum petition, and if they had been asked they would have granted the authority to the circulator to insert the ditto marks and the dates."

The trial court dismissed the petition on the basis that the insertion of dates of signing and ditto marks "was not actually authorized or directed." Although not specifically discussed in the opinion, the action of the trial court apparently was on the basis that affirmative proof of *specific* or *express* authority and direction must be shown for anyone else but the signer to fill in the date of signing and to complete the full "post office address" by placing ditto marks after the street and number (filled in by the signer) under the words "Grove City, Ohio," written after his name by a previous signer.

In their appeal to this court, relators first argue that, since the board of elections on August 8, 1968, determined that the petition contained sufficient valid signatures, on and after such date the county commissioners had a continuing mandatory duty to certify the referendum petitions to the ballot. It, of course, is true that the duty is lodged in the board of elections, not in the county com-

missioners, to determine the legal sufficiency of such a petition. *State, ex rel. Warner,* v. *Myers,* decided by this court on January 30, 1968, No. 8893. While doing so on the basis of evidence presented at a hearing before the county commissioners, here the ultimate determination that the petition was invalid was made by the board of elections, as indicated by its letter of September 25, 1968.

As stated in *State, ex rel. Federal Homes Properties, Inc.,* v. *Singer* (1967), 9 Ohio St. 2d 95, the function of mandamus is to compel the performance "of a present existing duty" and it contemplates the performance of an act which is incumbent on the respondent "when the application for a writ is made."

Thus the fact, if it be a fact, that the board of county commissioners may have had an immediate duty to certify the matter to a vote of the electors, after the commissioners had received the letter of August 8, 1968, from the board of elections, is not sufficient to compel mandamus after the receipt of the September 25, 1968, letter.

The basic question presented to this court for determination, therefore, is whether the petition, filed in full compliance with all the requirements of Section 303.12, Revised Code, is invalid as having failed to comply with any of the requirements of Section 3501.38, Revised Code.

Full compliance is shown as to any requirements of Section 303.12, Revised Code, by the fact that admittedly a petition was presented to the board of county commissioners within 30 days of its adoption of the resolution of April 9, 1968; the petition was "signed by" persons who admittedly were "qualified voters residing in the unincorporated area of the township * * * included in the zoning plan"; it contained language by which the signers represented that they were "qualified voters residing in the unincorporated area" of the township involved, Jackson Township; and, the number of such qualified voters who signed such petition far exceeded the required 8 per cent of the total vote for Governor at the last election.

It will be noted that Section 303.12, Revised Code, does not itself provide that any person do more than "sign" the petition and then file it with the board of coun-

ty commissioners. (Contrast, for example, Sections 305.31 to 305.37, Revised Code, as to a referendum to certain tax resolutions adopted by a board of county commissioners. See *State, ex rel. Clink,* v. *Smith* [1968], 16 Ohio St. 2d 1; *State, ex rel. Corrigan,* v. *Perk* [1969], 19 Ohio St. 2d 1; *State, ex rel. Vanderwerf,* v. *Warren* [1969], 20 Ohio St. 2d 9.)

However, counsel agree that the provisions of Section 3501.38, Revised Code, apply to the type of petition here involved. Their disagreement arises from divergent interpretations of the requirements of this statute, as contained in paragraph (C) thereof, and as applied to the undisputed facts herein.

This paragraph provides that "each signer shall place on the petition after his name the date of signing * * *." Admittedly, no signer personally placed any date of signing on the petition; nor did he specifically or expressly authorize or direct such placement by anyone else.

Paragraph (C) also provides that each signer shall place "after his name * * * the location of his voting residence * * *." If house number and street name be sufficient, the signers did place after their respective names "the location of his voting residence." But, the statute provides for placement "of his voting residence, *including* the street and number if in a municipal corporation or the rural route number, post office address, or township if outside a municipal corporation."

Since each of the signers had a voting residence "outside a municipal corporation," the position taken by respondents is that the personal placement of street and number by the signer after his name does not comply with the requirement that he include the "rural route number, post office address, or township." Furthermore, respondents assert that the addition by someone, prior to filing, of the ditto marks under the words "Grove City, Ohio," placed thereon by a few prior signers, thus completing the full "post office address" of a signer who had not written "Grove City, Ohio" after his house number and street, does not comply with the statutory requirement.

While it would appear that the placement of the words

"Jackson Township," instead of the words "Grove City, Ohio," *after* the house number and street also would constitute compliance with the statutory requirement of paragraph (C), here the reference to "Jackson Township" as the place of *residence* of *each signer* was contained *above* such signature.

Under this state of the record, we are presented not only with the question as to (1) whether there has been compliance with the provisions of Section 3501.38, Revised Code, but also with the question of (2) whether, even assuming noncompliance in the particulars already described, such has the effect of *invalidating* the *signatures* in question.

Consideration of these questions involves analysis of the holdings of the Ohio Supreme Court in *State, ex rel. Patton,* v. *Myers, Secy. of State* (1933), 127 Ohio St. 95, 90 A. L. R. 570; *State, ex rel. Poor,* v. *Addison* (1937), 132 Ohio St. 477; *State, ex rel. White,* v. *Brown, Secy. of State* (1966), 6 Ohio St. 2d 61; and *State, ex rel. Corrigan,* v. *Perk* (1969), 19 Ohio St. 2d 1; as well as the opinion of the Court of Appeals for Mahoning County in *State, ex rel. Donofrio,* v. *Henderson* (1965), 4 Ohio App. 2d 183. Even more fundementally however, such involves a consideration of the *full text* of Section 3501.38, Revised Code; not just paragraph (C) thereof.

*Myers* involved an interpretation of Section 1*g*, Article II of the Ohio Constitution providing for initiative, supplementary or referendum petitions. The issue involved was whether "signers of referendum petitions must personally fill in their residences, wards, townships or precincts on such referendum petitions." After quoting the applicable language of the Constitution, the opinion of Judge Allen stated, at pages 96, 97:

"These provisions seem to the majority of the court conclusive. They require the names of all signers to be written in ink, 'each signer for himself,' and hence signify that the name can be signed by no one except the elector sponsoring the petition. With reference to the township and county, the municipality, the street number, the ward and precinct, Section 1*g* simply requires that the signer

shall 'state' or 'place' on the petition this information. This 'stating' or 'placing' is sharply distinguished both in word and in meaning from the signing of the name by 'each signer for himself.' Hence we hold in the mandamus action that it is not necessary for an elector himself to write out the date, his place of residence, the township and county, the municipality, the street number, or the ward or precinct. He is required to sign his own name, and if the other information called for is properly filled in by some one else, at the direction and with the authority of the elector signing the petition, the Constitution has been complied with. This ruling requires that the demurrer filed to the petition in mandamus be sustained."

No discussion was had in *Myers* as to the meaning of the words "at the direction and with the authority of the elector signing the petition." The syllabus of *Myers* held that while a signer of such petition must personally sign his own name to such petition "some other person, under the authority and direction of the signer, may write on the petition, after the signer's name, the date of signing and the signer's place of residence * * *."

The *Addison case* (132 Ohio St. 477) involved the interpretation of a statute providing for initiative petitions in municipalities. The statute contained the language providing that "each signer of any such initiative or referendum petition * * * shall place on the such petition, after his name, the date of signing, his place of residence, including street and number, if any, and the ward and precinct." The court, citing the *Myers case*, held that "the ward and precinct need not necessarily be placed on the petition by the signer himself but may be filled in by someone else under his direction and authority." No discussion was had as to what was meant by or what would constitute a filling in under "his direction and authority."

*State, ex rel. White*, v. *Brown, Secy. of State*, 6 Ohio St. 2d 61, involved an interpretation of the provisions of Section 3501.38 (C), Revised Code. There, the Secretary of State invalidated a large number of signatures appearing upon a nominating petition for Governor, on the basis that an examination of the petitions would indicate that some-

one other than the signer had inserted the date following the signature. The court held, as indicated in its syllabus, that:

"1. Under Section 3501.38 (C), Revised Code, a person other than the signer of a petition may, under the authorization and direction of the signer, write on the petition, after the signer's name, the date of signing. (*State, ex rel. Patton, v. Myers. Secy. of State,* 127 Ohio St. 95, approved and followed.)

"2. The mere fact standing alone, that the date of signing after the name of the signer of a petition was written by someone other than the signer, will not support a reasonable inference that such date of signing was not written under the authorization and direction of the signer."

Again, the opinion contains no discussion as to what is meant by "authorization and direction of the signer," although counsel for respondents lay great stress upon the fact that the opinion does make reference to affidavits, filed with the Secretary of State after the action had been filed in the Supreme Court, stating that "each of the dates involved had been written in by the circulator in the presence of and at the request of the signer of the petition."

In the *Perk case* (19 Ohio St. 2d 1), decided June 18, 1969, the court held that a petition for referendum on a sales and use tax resolution, adopted by the county commissioners, which did not contain the ward and precinct of the signers as required by Section 305.32, Revised Code, was invalid. This did not involve a case where such information had been added, before filing of the petitions, either with or without the authorization and direction of the signer, expressed or implied. The petitions were filed without containing such information.

While holding that specific information required by statute must be contained in a petition for referendum, *Perk* does not discuss the legal effect of the placement of such information on the petition by persons other than the signer. The only allusion to this question is the reference in the dissenting opinion of O'Neill, J., that:

"The position of relator, and respondents Carney and

Duffy in their separate answer supporting relator, is that someone—signer, circulator, committee, or designee of a signer, circulator, or committee—must go to the board of elections and engage in the meaningless ritual of copying from the records of the board of elections onto the petitions which are about to be filed with the board of elections, the ward and precinct of the signers of the petitions."

The *Henderson case* (4 Ohio App. 2d 183), decided by the Court of Appeals for Mahoning County in 1965, in essence, is similar to *State, ex rel. White,* v. *Brown, Secy. of State,* 6 Ohio St. 2d 61, decided by the Supreme Court the next year. Petitions as a candidate for Judge of the Municipal Court of Youngstown were rejected by the board of elections, after receipt of a letter from the Secretary of State informing the board that under the provisions of Section 3501.38 (C), Revised Code, "each signer must write his own name and address and date of signing." On the basis of the reasoning in *Myers,* the court held that:

"3. The provisions of Section 3501.38 (C), Revised Code, have been complied with when the signer of a nominating petition has personally signed his own name in the presence of the circulator, and the circulator or some other person under the authority and direction of the signer has written in all other information therein required.

"4. The provisions of Section 3501.38 (C), Revised Code, have been complied with when a signer of a nominating petition, or some other person under his authority and direction, uses ditto marks to indicate either the date of signing or the location of his voting address."

It will be observed that none of these cases decides or discusses the question whether the "authorization and direction" must be specific and express, or whether it may be necessarily implied from the desire of the signer to have his signature count. In our opinion, a qualified elector signing a petition of this nature and writing thereafter his house number and street impliedly authorizes any and all persons physically holding such petition, prior to its actual filing, to complete, if necessary, the full "post office address."

It is our further opinion that such a signer also impliedly authorizes any such person to insert, either by writing or by the use of dittos, the date of signing.

Where, as here, such information is accurately filled in, we conclude that it was done "under the [implied] authority and direction of the signer," absent evidence to the effect that such was done *contrary* to authorization, express or implied.

The full text of Section 3501.38, Revised Code, is as follows:

"All declarations of candidacy, nominating petitions, or other petitions presented to or filed with the secretary of state or a board of elections or with any other public office for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue shall, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code relating thereto, *be governed by the following rules*:

"(A) Only electors qualified to vote on the candidacy or issue which is the subject of the petition shall sign a petition. In registration territory each signer shall be a registered elector. The facts of qualification shall be determined as of the date when the petition is filed.

"(B) *Signatures* shall be affixed in ink or indelible pencil.

"(C) Each signer shall *place* on the petition after his name the date of signing and the location of his voting residence, including the street and number if in a municipal corporation or the rural route number, post office address, or township if outside a municipal corporation.

"(D) No person shall write any *name* other than his own on any petition. No person may authorize another to *sign* for him.

"(E) Every petition paper shall bear the affidavit of the circulator that *he witnessed the affixing of every signature,* that all signers were to the best of his knowledge and belief qualified to sign, and that every *signature* is to the best of his knowledge and belief the signature of the person whose signature it purports to be.

"(F) If a circulator *knowingly permits an unqualified*

*person to sign* a petition paper or permits a person to *write a name other than his own* on a petition paper, that petition paper is *invalid;* otherwise the signature of a person not *qualified to sign shall be rejected* but shall not invalidate the other signatures on the paper.

"(G) The circulator of a petition may, before filing it in a public office, strike from it any signature he does not wish to present as a part of his petition.

"(H) Any signer of a petition may remove his signature therefrom at any time before the petition is filed in a public office by striking his name therefrom; no signature may be removed after the petition is filed in any public office.

"(I) *No* alterations, corrections, or *additions* may be made to a petition *after it is filed* in a public office." (Emphasis added.)

In examining that statute it will be noted that while no person is permitted to write any *name* other than his own and no person is authorized to *sign* for another, and while the circulator is required to make an affidavit that he witnessed the affixing of every *signature,* there is no provision forbidding others to write other information on the petition, and there is no provision requiring that the circulator witness any such other writings or additions. The only prohibition against "alterations, corrections, or additions" is that they may not be made to the petition "after it is filed."

Then, too, it should be observed that the statute contains only one paragraph pertaining to the *invalidation* of signatures, paragraph (F). Neither this paragraph, nor any other language, provides that a valid *signature* is invalidated because of any noncompliance with paragraph (C). The only provision for invalidation is that invalidating an entire petition paper where a circulator "knowingly permits an unqualified person to sign" or (knowingly) "permits a person to write a name other than his own," and the provision for the rejection of "the signature of a person not qualified to sign."

Much has been written on the question of determining what provisions of legislation are mandatory and what

are directory. The many criteria to be used in such a determination are referred to in 50 Ohio Jurisprudence 2d 26 *et seq.*, Section 18 *et seq.* Among those are considerations of "its nature and character; its reason, object or purpose; its subject matter and language; its effect; and the conseqøences which will result from construing it either as mandatory or as directory." Without further belaboring the subject matter, and from a consideration of all these factors, we conclude that:

(1) The provisions of paragraph (C) of Section 3501.-38, Revised Code, do not require specific or express authorization and direction by the signer of a petition to place after his name the date of signing, and to complete the location of his voting residence by the addition, after the house number and street, of the name of the post office address; but the authority to accurately fill in such information is inferred merely from the act of signing, in the absence of evidence that such was done *contrary* to the directions, express or implied, of the signer;

(2) The provisions of paragraph (C) of Section 3501.-38, Revised Code, to the extent that they would be capable of an interpretation that they would require an express or specific authorization by the signer to someone else to place such information on the petition, are merely directory, and not mandatory, and cannot serve as a basis for invalidation of a petition which contains the required information at the time it was filed, even if filled in without specific or express authorization of the signer.

The judgment of the Common Pleas Court is reversed. It appearing from the bill of exceptions that, by agreement, two of the issues presented in the answer were not submitted or decided by the court, the case is remanded to that court for consideration of those issues and further action in conformity to this decision.

*Judgment reversed and cause remanded.*

TROOP, P. J., and STRAUSBAUGH, J., concur.