**STATE ex rel. Basil R. BATTAGLIA,
Plaintiff below, Appellant,**

**v.**

**The DELAWARE DEPARTMENT OF
ELECTIONS, FOR NEW CASTLE COUN-
TY, et al., Defendants below, Appellees.**

**The DELAWARE DEPARTMENT OF
ELECTIONS, FOR NEW CASTLE COUN-
TY, et al., Defendants below, Cross-Ap-
pellant,**

**v.**

**STATE ex rel. Basil R. BATTAGLIA,
Plaintiff below, Cross-Appellee.**

Supreme Court of Delaware.

Submitted Aug. 12, 1975.

Decided Aug. 12, 1975.

Opinion Sept. 10, 1975.

Joseph S. Yucht, of Balick & Yucht, and Lester J. Taufen, of Taufen & Brewster, Wilmington, for plaintiff below, appellant.

Charles Snyderman, Deputy Atty. Gen., Wilmington, for defendant below, appellee and cross-appellant, the Delaware Department of Elections for New Castle County.

Sidney Balick and William E. Wright, of Aerenson & Balick, Wilmington, for intervenor on appeal, Speaker of the House Casimir S. Jonkiert.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice.

This is an appeal from the denial by the Superior Court of a writ of prohibition sought by the plaintiff to prevent the holding of a special election on the date set. The determinative question is whether the Speaker of the House of Representatives had the legal authority to issue a writ of election under the circumstances.

On July 28, 1975, pursuant to proclamation of the Governor, the General Assembly was recalled into session for the purpose of considering certain revenue measures. At the close of the day, the Speaker recessed the House of Representatives "to the call of the Chair." On July 30, 1975, Representative Francis M. Jornlin, of the 6th Representative District of New Castle County, died. A writ of election was issued by the Speaker on August 6th,

pursuant to 15 Del.C. § 7101,[1] mandating the New Castle County Department of Elections to hold a special election under 15 Del.C. § 7104[2] to fill the vacant seat within 10 or 11 days from the date of the writ. The Department set the election for Saturday, August 16th.

Plaintiff, a resident of the 6th District, petitioned the Superior Court for a writ of prohibition to prevent the Department from conducting the August 16 election. His contention was that the Speaker lacked the authority to call the election because the House on July 30th—the date the vacancy occurred—was not "in session", a prerequisite for the exercise of such authority. Consequently, he argued, a writ of election could not have been properly issued to the Department for at least 30 days after the vacancy, and then only after the Governor had convened the General Assembly under 15 Del.C. § 7103.[3] The Department maintained that a writ of prohibition could not lie against it to prevent a purely ministerial function—the carrying out of the Speaker's mandate; and the

Speaker contended[4] that he had the authority to call the election.

The writ of prohibition was denied on the merits by the Superior Court on August 8. The plaintiff appealed from the denial of the writ and the Department cross-appealed from the lower Court's ruling concerning its availability. After argument, the decision below was upheld by this Court on August 12 in a decision announced from the Bench. This is our confirmatory opinion upon the two issues before us: (1) the propriety of a writ of prohibition for the plaintiff's purposes; and (2) the authority of the Speaker to call the election.

I

The Department argues that in the instant case its function—carrying out the Speaker's writ of election—was merely ministerial; thus, the extraordinary writ would not lie to restrain its actions. The Superior Court rejected this contention, holding that a writ of prohibition is proper

1. 15 Del.C. § 7101 provides:
    "§ 7101. Vacancies in General Assembly; Writs of election.
    "Whenever there is a vacancy in either house of the General Assembly, by reason of failure to elect, ineligibility, death, resignation or otherwise, within 30 days of the creation of the vacancy a writ of election shall be issued by the presiding officer of the house in which the vacancy exists, directed to the department of the county in which such vacancy exists or, in case of necessity, in such other manner as shall be provided by law. Whenever there is such vacancy in either house and the General Assembly is not in session, the Governor may issue a writ of election to fill such vacancy, which writ shall be executed as a writ issued by the presiding officer of either house in case of vacancy."

2. 15 Del.C. § 7104 provides in pertinent part:
    "§ 7104. Day for holding special election.
    "The department shall set the day for holding a special election for the General Assembly, but such day shall be not more than 11 or less than 10 days next after the day of receiving the writ, exclusive of that day, in case such writ be issued to fill a vacancy occurring or existing while the Gen-

eral Assembly is in session or within 20 days prior to the convening of the General Assembly in regular or special session. If the vacancy occurs or exists 20 days or upwards prior to a general or special session of the General Assembly, the day appointed for holding a special election pursuant to such a writ shall be not more than 40 nor less than 30 days next after the day of receiving the writ, and so as to permit the holding of the special registrations of voters provided by law in case of a special election * * *."

3. 15 Del.C. § 7103 states:
    "§ 7103. Vacancy in House.
    "If a vacancy happens in the House of Representatives after an adjournment, without day, of the General Assembly, no writ of election shall be issued under § 7101 of this title, unless the Governor shall also issue a writ for convening the General Assembly."

4. Because the Department of Elections only wished to contest the propriety of a writ of prohibition to enjoin its solely functionary role, and not the Speaker's authority to issue the writ of election, the Superior Court permitted the Speaker to intervene to defend against plaintiff's petition on the merits.

"to restrain the actions of an administrative body where the actions of that agency are bottomed upon questioned legal authority."

■ The writ of prohibition ordinarily issues from a higher court to prevent a lower court from taking cognizance of a matter not within its jurisdiction or, where the lower court properly has cognizance of an issue, from exceeding its authority. *Knight v. Haley,* Del.Super., 6 W.W.Harr. 366, 176 A. 461, 464 (1934). In addition, it has been held that the Superior Court may issue a writ of prohibition to an administrative agency "where that body is performing a judicial or quasi-judicial function." *Family Court v. Department of Labor & Industrial Relations,* Del.Ch., 320 A.2d 777, 779 (1974).

Although it has been held in other jurisdictions that a writ of prohibition is proper to restrict election activities,[5] we had, and still have, serious doubt that this extraordinary writ was appropriate to restrain the purely ministerial activity of holding a special election on a date set by higher authority. Nevertheless, in view of the exigencies of time and the inadequate period for briefing and study, we assumed without deciding that the writ of prohibition was a proper remedy to be sought by the plaintiff in this case. We recognized the dilemma encountered by plaintiff's counsel in view of the status of our case law when the petition was filed. See *Starnes v.*

*O'Grady,* Del.Ch. Civil Action No. 4766 (April 4, 1975).[6] Therefore, we assumed *arguendo* the propriety of the writ and proceeded to decide the merits of the case.

## II

■ Plaintiff argued that the Speaker was not authorized to issue the writ of election under § 7101 because the House was not "in session" on July 30th, the date the vacancy occurred. He argued that the session of July 28th was terminated because it was "recessed to the call of the Chair" without a day certain for reconvening. Thus, it was asserted, such recess amounted to an "adjournment without day", involving 15 Del.C. § 7103 under which the Governor must convene the General Assembly before a writ of election may issue. We found those arguments unpersuasive.

Under the express language of Article II, § 4 of the Delaware Constitution, the session of July 28 was a "recall" of the regular session of the General Assembly, which normally ends on June 30th. In part, § 4 provides:

"The General Assembly may continue in session each calendar year so long as, in its judgment, the public interest may require; however, each session shall not extend beyond the last day of June unless the session is *recalled* by the Governor or the mutual call of the presiding

5. See, *e. g., State ex rel. Newell v. Brown,* 162 Ohio St. 147, 122 N.E.2d 105 (1954) (writ proper to prohibit the placing of names of certain persons on ballot and, concomitantly, to disallow the distribution of any ballots bearing such names) ; *State ex rel. Higgins v. Brown,* 170 Ohio St. 511, 166 N.E.2d 759 (1960) (writ of prohibition allowable to prohibit placing name of ineligible candidate on ballot) ; *State ex rel. Corrigan v. Perk,* 19 Ohio St.2d 1, 249 N.E.2d 525, *app. dismissed,* 396 U.S. 113, 90 S.Ct. 397, 24 L.Ed.2d 307 (1969) (prohibition granted to prevent county officials from counting or validating certain petitions in referendum). *Contra, Wyman v. Durkin,* N.H.Supr., 330 A.2d 772 (1974) (writ of

prohibition improper to restrain, *inter alia,* Ballot Law Commission from certifying a winner in contested United States Senate election where Commission was proceeding within its statutory jurisdiction) ; *cf. Moore v. Smith,* Ky., 307 S.W.2d 191 (1957) (writ inappropriate to restrain lower court from incorporating city because of the Court's refusal to consider unregistered voters).

6. In *Starnes,* the Court of Chancery held "that since the power to hold an election is a political power, equity has no jurisdiction to restrain officers entrusted by law with the duty of holding elections from the exercise of such power, * * *."

officers of both Houses." (emphasis added.)

The Governor exercised his Article II, § 4 "recall" power by the issuance of a proclamation under Del.Const. Art. III, § 16:[7]

"I, Sherman W. Tribbitt, Governor of the State of Delaware, pursuant to Article III, Section 16, of the Constitution of the State of Delaware, do hereby convene the House of Representatives and Senate of the 128th General Assembly of the State of Delaware into Special Session on Monday, July 28, 1975, at 1:00 p. m., to consider, inter alia, an Omnibus Amendment to the 1976 Budget Appropriation Act originally designated Senate Bill 431, and accompanying matters supporting same."

Clearly, matters to be taken up during this recall session were a continuation of the ordinary business of the regular session: the operating budget and taxes.

We took judicial notice that the words "recessed to the call of the Chair" have a common and ordinary meaning and usage in Delaware's General Assembly. By general usage and recognition, those words, when used by the presiding officer of either House at a regular session, do not mean, or result in, an adjournment without day or end of the session, even though no date certain is specified for reconvening. By custom, adjournment without day is accomplished by motion and vote; a mere recess is not. Since the understanding of the members of the General Assembly as to

their status is equally as important as any other consideration, and in light of the fact the July 28th session was a "recall" of the regular session under Article II, § 4, the words "recess to the call of the Chair" must be given the same meaning and effect as when used at a regular session, i. e., a temporary recess though without a date certain for reconvening, and not a terminal adjournment without day or ending of the session. We have been shown no compelling reason for ascribing a different meaning to the "recess to the call of the Chair" formula when used by the presiding officer at a session convened by "recall" than when used at a regular session.

To further support the conclusion that the July 28th "recall" was not adjourned or ended, but remained in session, full consideration must be accorded to Del.Const. Art. II, § 12,[8] which provides that neither House may adjourn for more than 3 days without the consent of the other. There is no indication on the record before us that the Senate consented to an adjournment of the House on July 28th.

The question of whether the "recall" session of July 28th was ended is not simply a matter of verbiage, i. e., it is not simply a question to be resolved by a factual determination as to whether the Speaker ended the meeting with the word "recessed" or the word "adjourned". What is important is whether, under the normal practice and procedure of the House, the session was ended. On July 28, the normal practice

---

7. Del.Const. Art. III, § 16 provides in relevant part:
"§ 16. Special sessions of the General Assembly; adjournment; special session of the Senate.
"Section 16. [The Governor] may on extraordinary occasions convene the General Assembly by proclamation; and in case of disagreement between the two Houses with respect to the time of adjournment, adjourn them to such time as he shall think proper, not exceeding three months."
We note that an exercise of the Governor's Article III power does not relate to a "recall"

of a regular session when exercised for an emergency or between Election Day and the second Tuesday of the subsequent year, the date under Article II, § 4 for the convening of the General Assembly.

8. Del.Const. Art. II, § 12 provides:
"§ 12. Consent of each House to adjournment.
"Section 12. Neither House shall, without the consent of the other, adjourn for more than three days, nor to any other place than that in which the two Houses shall be sitting."

and procedure occasioning a recess, and not a termination or adjournment without day, were used.

Accordingly, we hold that the House session "recalled" on July 28 was not terminated at the end of that day; it remained and was in session on July 30, 1975, the date on which the subject House vacancy occurred by reason of the untimely death of Representative Jornlin.

It follows that the Speaker had the authority to issue the writ of election and the writ of prohibition was properly denied.

\* \* \* \* \* \*

Affirmed.